# Exhibit B

# N.V Curacaose Dok Maatschappij
# Curacao Dry-dock Company Inc.
## Shipreparing - Engineering - Hull and Tank Treatment
## AGREEMENT

- between —

N.V Curacaose Dok Maatschappij
Curacao Dry-dock Company Inc.

- And -

The Church of Scientology Flag Ship Service Organization Inc.
C/O "SMV FREE WINDS"
at S.E.L. Maduro & Sons
Maduro Plaza
Curacao Netherlands Antilles
on behalf of FREEWINDS (OWNER)


REPAIR CONTRACT
No. CDM/CD580/PL-2009/ MHU8782

Work Specification
SMV FREEWINDS REPAIR SPECIFICATION SEPTEMBER 2013

Date:   September 23rd 2013

Beside the terms and condition set forth in this agreement the following documents form an integral part of this agreement: vessel's specifications provided by OWNER, OWNER'S work specification, CONTRACTOR'S tender with agreed prices, the general conditions of both parties and any addendums mutually agreed in writing.

1

1. Agreed Work Period:

1.1 ...... ...ensuing days, ...unning from first full day after vessel's
...... ... premises for repairs subject a protocol to be signed
...... ...atives of CONTRACTOR and OWNER confirming
...... ... all respects to commence the work as specified in the
...... ... Tender No. CDM/CB 580/PL.2012/SVE 8782 dated
...... ... 2013 with following work to be decisive for the work

- General Services for dry docking "SMV Freewinds"
- Steel Work: Cofferdams Pump room, Main Engine Room, Ballast #2, #21, Fresh water tank #19 port and stbd, and AC Room
  Rudder inspection
  Propeller blade inspection
  Bow Thruster overhaul
  Anchors and chains
  Hull spot blasting & painting

Any additional jobs other then the above indicated jobs shall be considering as change order and will be evaluated case by case.

It is assumed that the vessel will arrive in Curacao at or around September 23rd 2013.

2. Redelivery Protocol: **Delivery, Redelivery and Acceptance of the Vessel**
The Vessel shall be delivered at a safe place Nominated by the Contractors on the Delivery Date, safely afloat and, unless otherwise agreed, gas free and/or inerted, free of cargo, slops, Sludge, dirty ballast and of any substances in the Structure of the Vessel in way of the Works which are dangerous or harmful to health.
The Owners shall keep the Contractors promptly advised of any changes to the Vessel's Delivery Date.
A Protocol of Delivery shall be signed by the Parties hereto confirming the time of Delivery.

2.1. Prior completion of the work, at least three (3) days prior to expected redelivery, CONTRACTOR will provide OWNER with a Pro-forma-Invoice enabling to check the prices and work done or still to be done. By means of this Pro-forma-Invoice, both contract partners have the time to clarify any possible discrepancies and to make sure that the final invoice is ready at least one (1) working day prior expected date of redelivery, to give OWNER the time to arrange remittance/bank confirmation prior to vessel's departure. In case CONTRACTOR does not provide a Pro-forma-Invoice timely, any delay in sailing will count against the agreed Work Period.

2

2.2. Upon completion of the work, OWNER and CONTRACTOR to sign the Redelivery Protocol in which it is confirmed that all work have been completed to OWNER'S full satisfaction. In case some of the work has not been performed to the satisfaction of the OWNER'S superintendent, it is to be clearly specified how to settle the discrepancies if any, i.e. either to rectify promptly or at a later stage or to find a financial solution. However in event those parties cannot agree on a final solution for the disputed amount(s), the matter will be resolved by clause 15.

3. Work Quality:

3.1. The CONTRACTOR to carry out all work in accordance with the terms and the conditions of this agreement and in compliance with good craftsmanship and adhering to rules and regulations of the Classification Society in force at the date of this agreement.
OWNER'S superintendent to sign off promptly any segments of executed work upon request of CONTRACTOR.
CONTRACTOR has to ensure sufficient workers, materials and equipment to finish the job in the specified time.
CONTRACTOR will not be responsible if OWNER'S supplies are not delivered on time and/or are not suitable and/or are not of the right fit.

3.2. The CONTRACTOR shall coordinate with OWNER'S superintendent the attendance of the Class Surveyor to mark/supervise/approve class effecting work or other surveys which will be necessary or become due. The OWNERS shall bear all fees for such Class surveys including the issue of certificates directly to the Classification Society. Work interruptions and/or delays resulting from decisions or lack of decisions and/or due to disputes between OWNER and Classification Society and/or Class Surveyor and/or Experts and/or Factory Representatives will not count towards agreed Work Period.

4. Contract Prices:

4.1. CDM_____ with prices as agreed between both parties.



3

5. Payment:

5.1. To be effected in following down payments:

- 75% of estimated contract value to be received prior to the departure of the vessel from the dock.
- Balance to be received by CDM within 30 days of vessel's departure.

5.2. Payment shall be made in United States Dollars to the bank account indicated by the CONTRACTOR on his invoices or failing that to:

ACCOUNT:
NAME OF ACCOUNT:
NAME OF BANK:
ADDRESS OF BANK:
SWIFT CODE:

5.3. In the event that any amount payable to the CONTRACTOR is not paid on the due date, the OWNER to pay interest at the rate of 1.5 % per month with a one day of grace. If there is a dispute due to poor workmanship or CONTRACTORS negligence, the 1.5% interest penalty will not be enforced, until the dispute is finalized.

6. Delayed or Advanced Redelivery:

6.1. If the vessel is not redelivered within the agreed work period and provided the delay was not caused by force majeure, the CONTRACTOR to pay for each day or pro rata of delay the amount of $5,000 (Five thousand U.S. dollars) and limited to 5% of Final Invoice amount with one day of grace.
In case of earlier delivery of the vessel than the agreed work period OWNER to pay a bonus of $5,000 (Five thousand US dollar) for each day or pro rata with one day of grace.

6.2. If in CONTRACTOR'S opinion, adverse weather or other adverse conditions beyond its control cause delay or interrupt major work, this fact is to be brought to the attention of OWNER in writing by specifying the period that will not count towards the work period agreed.

7. Changes of Works:

7.1. The OWNER shall notify CONTRACTOR in writing if they require any modification in agreed work. CONTRACTOR shall promptly inform OWNERS of any increase or decrease in the Contract Price and/or Work Period and/or any other adjustment in the terms of this Agreement. The OWNER and the CONTRACTOR shall promptly agree the new terms of the increase or decrease, if any, in writing.

4

8.  Additional Work:

8.1.  In case OWNER requires additional work, CONTRACTOR to promptly provide prices and to advise if this additional work can be executed simultaneously with contracted work and if not, in as far this will extend the contracted Work Period.

8.2 Owners' Work
Subject to prior written agreement with the Contractors, whose consent shall not be unreasonably withheld, and provided Contractors cannot carry out such work but not including routine planned maintenance of vessels equipment, the Owners, or the Master and crew, or any sub-contractor employed or engaged by the Owners, shall be entitled to carry out the Owners' own work on the Vessel, provided always that such routine maintenance shall (1) not interfere with the work to be carried out by Contractor hereunder (2) not include hot work unless prior approval has been obtained and (3) not include underwater work. Owners shall remain responsible for all of their actions irrespective whether approval from Contractors has been obtained and Owners shall always ensure that such work does not interfere with or delay the Works.
The Owners may also appoint a manufacturer's representative or sub-contractor to oversee work performed by the Contractors, in which case Owners and/or such representative or sub-contractor shall be liable for the due performance of their obligations under this Contract.

9.  Reduction of Work:

9.1.  In case OWNER decides to reduce work because of weather conditions, delays or other reasonable circumstances, both contract partners to agree a new Working Period reflecting proportionally the reduced work. In case the value of the reduction is more than 15% of the contract value, CONTRACTOR has the right to be compensated for idle time of its installations, workforce and equipment with a minimum rate of USD$5,000 (Five Thousand dollars) per day / pro rata.

10.  Insurance:

10.1.  Throughout the period during which the Vessel is at the designated premises or during dry docking or sea trials, if any, the vessel shall remain fully covered by OWNER for Hull & Machinery, War Risks and P&I. However, this is not releasing CONTRACTOR from any liability which the law may impose.
However, the total amount of liability will never exceed the amount of two times the contract value in the event that the occurred damage is not covered by the contractor's general liability insurance.

5

11. Force Majeure

11.1. CONTRACTOR shall be under no liability for events beyond its control, whatsoever for destruction, damage, delay or any matters of any nature arising out of workmen strikes or lock-outs, floods, storms or other extreme weather conditions, fire, acts of God, acts of rulers, war or other hostilities, blockades, revolution, insurrections, mobilization, civil war, civil commotion, riots, sabotage, failure of electricity or other services or other causes beyond the control of the CONTRACTORS or their employees.

11.2. If any one of the events described in Paragraph 11.1. occur, the Work Period shall be extended by such period as may be reasonable in all circumstances for the CONTRACTOR to complete the work.
OWNER to be informed, whether such events as per Paragraph 11.1. come to CONTRACTOR'S knowledge prior to vessel's arrival or during repair period. Any dispute between both parties as to the reasonable effect of any such event on the Work Period shall be determined in accordance with Clause 15 of this Agreement.

12. Guarantee of Material/Workmanship:

12.1. CONTRACTOR guarantees for a period of 6 (Six) months from the date of redelivery of the vessel the works and the alterations and/or equipment installed and/or engine repairs carried out, against all defects which are due to poor workmanship.

12.2. CONTRACTOR will not be liable for any defect or damage to the vessel caused by the negligence, mismanagement, willful default or other improper acts of OWNER, its employees or agents or caused by normal wear and tear. Same if OWNER instructs without the knowledge of CONTRACTOR a third party to interfere or affect part of the work.

12.3. OWNER, or his duly authorized representative, shall notify CONTRACTOR in writing as soon as possible and in any event within seven (7) days after the discovery of any defect for which a claim is to be made under this Clause. OWNER'S written notice shall include full particulars as to the nature and extent of the defect or damage caused thereby but excluding any consequential damage as hereinafter provided.

12.4. CONTRACTOR shall have no obligation under this Clause for any defects discovered prior expiration date of the guarantee; unless notice of such defects are received by CONTRACTORS not later than seven (7) days after expiration date.

12.5. CONTRACTOR shall have no liability under this Clause for any defects discovered after expiration of the guarantee period, except as to latent defects.

12.6. CONTRACTOR'S liability shall be limited to performance of the repairs up to the limit as described in Paragraph 10.1.

6

12.7. CONTRACTOR shall be under no liability whatsoever to OWNER or any other person acting on their behalf for death or personal injury sustained by any such person on board the vessel or at CONTRACTOR'S premises, except to the extent that such death or personal injury have been caused by the negligence of CONTRACTOR or of any of their employees acting within the scope of their employment.

12.8. The CONTRACTOR is to protect the OWNER of the vessel from claims for workman injured during the execution of repairs as per this specification and from any claims and fines against the vessel or her OWNER through the contamination of the harbor directly attributed to the CONTRACTOR'S labor. CONTRACTOR shall take out adequate and proper insurance covering all workman as required by law, it being expressly understood that all workman furnished by the CONTRACTOR for the work shall, at all times, be employees of the CONTRACTOR and not of the OWNER.

12.9. CONTRACTOR shall remedy at their premises and expense any defects against which the vessel or any part or equipment thereof, is guaranteed under Paragraph 12. However, if the vessel is not in port or it is inconvenient to bring the vessel to CONTRACTOR'S premises and if forwarding or supplying replacement parts or materials to the vessel would impair or delay the operation or working schedule of the vessel, then OWNER shall, with the previous consent of CONTRACTOR, effect the necessary repairs or replacements elsewhere, provided OWNER shall give CONTRACTOR reasonable written notice of the time and place such repairs will be made enabling CONTRACTOR to send its representative on board to inspect and report the nature and extent of the defects.

After such inspection has been completed, CONTRACTOR to advise OWNER of their acceptance or rejection of the defects as far as they fall under the guarantee of this Agreement. Upon CONTRACTOR'S agreement that the defects are within the terms of Paragraph 12, CONTRACTOR to pay to OWNER an amount equal to the cost if same repairs or replacements would have been made at their premises. Thereafter, OWNER have the option to have the repairs or replacements carried out at another shipyard, workshop or by OWNER'S own crew.

(1) Each party agrees to indemnify the other party against all claims made against the other party by third parties (being those individuals and entities for whom neither party is responsible under this Contract) in any way related to thisContract, where such claims are caused by, or to the extent that they are contributed to by the indemnifying party's negligence, gross negligence or willful default or that of those for whom it is responsible under the terms of this Contract.
(2) The indemnifying party shall bear the expense of investigations and defenses of all claims against which the other party is indemnified under sub-clause (1) above and all lawsuits arising there from including the legal costs of the indemnified party

7

13. Property of Scrap:

13.1. Any metal scrap resulting from repairs to become the property of CONTRACTOR.

14. Frustration of Contract:

14.1. If, by reason of any supervening events beyond OWNER'S control, including but without limitation, actual or constructive total loss of the vessel, this agreement is discharged by frustration or impracticability, OWNER shall pay an amount in the value of materials or equipment obtained by CONTRACTOR for the vessel, whether installed or not, and the value of the works carried out prior to the date of discharge. This materials and equipment will be owned by the OWNER.

14.2. If the cost of works and prepared material at the date of discharge is less than down payments that OWNER already made, CONTRACTOR to refund any overpaid difference.

15. Arbitration Clause:

15.1. This agreement is governed by Laws of the Netherlands Antilles. Any disputes and claims arising under this agreement shall be referred to arbitration.

15.2. In the event of an arbitration occurring prior to redelivery of the vessel, the arbitration tribunal shall be entitled to determine whether the Work Period will be extended as a consequence of the institution of such proceedings and, if so, to what extent. This applies of course only if any work has been interrupted by the arbitration procedures.

16. Taxes and Dues:

16.1. All taxes and duties incurred for supplies or works arranged by CONTRACTOR during the period of the works shall be paid by CONTRACTOR, otherwise by OWNER.

17. Nondisclosure:

17.1. Neither the owner or the contractor or anyone related to one of them is permitted to divulge any information about this agreement, its content or any fact or event regarding its implementation to any third party or person, exempting the situations as prescribed by the law.

8

18. Notices:

18.1. Any and all notices, inquiries and communications in connection with this agreement to be in writing, whether to be handed over by letter, e-mail or fax.

18.2. All notices or other documents or communications to OWNER to be sent to:
on behalf of FREEWINDS
C/O S.E.L. Maduro & Sons
Maduro Plaza
Curacao N.A.
Telephone: 727-445-4309
Email: mnapier@wintwo.org, kam.mitchell@wintwo.org

18.3. All notices or other documents or communications for CONTRACTOR be sent to: CDM

Telephone: +5999 7330000
Email: cac@cdmnv.com

19. Assignment:

19.1 CONTRACTOR and OWNER shall have the right to transfer and assign their respective rights and obligations under this agreement, subject to the prior written consent of the other contract party. Such assignee or transferee shall be substituted as a party to the agreement and shall be bound by the terms of this agreement in every way as if it were named in this agreement as CONTRACTOR or OWNER as may be the case.

20. General Conditions:

20.1. CONTRACTOR has the right to use materials with different dimensions and/or grade, provided the required strength and quality is not reduced and subject approval of the Classification Society if applicable. Material substitutions can result in additional costs to the OWNER and to be mutually agreed upon.

20.2. Whenever the assistance of supplier's representatives, experts or Class Surveyors is required, expenses incurred will be for OWNER'S account.

20.3. During repair period OWNER has the right to receive spare parts, consumables, equipment or provision from whatever origin. However OWNER'S agent to make sure that such supplies will be properly declared in accordance with local customs regulations. Any customs fees are for OWNER'S account. All entry and dispatch of goods to and from the yard/vessel have to be properly coordinated with CONTRACTOR.

9

20.4. Unless otherwise specified, all tests and trials will be carried out by using vessel's means and gear.

20.5. Unless otherwise specified, prices quoted by CONTRACTOR are always excluding staging, access work, cleaning, painting, lighting, ventilation, gas free certificate etc.

20.6. The tender price for all work specified with terms like or similar to "renew as necessary", "in accordance with instructions" or "renewal of defective parts" and "to make workable", "to overhaul", "to repair", etc. only covers opening up, cleaning for examination and reclosing in place, including eventual renewal of non-metallic joints and packing of normal type.

21. Authorized Persons:

21.1. Orders or changes of work to be only requested in writing by OWNER'S Superintendent or Authorized Representative. Ship's staff is not supposed to place any work orders.

21.2. Owner agrees to two eight (8) hour shifts with no overtime. No overtime shall be worked for the Owners accounts unless the Owner's Representative shall approve the items to be worked on, the maximum number of overtime and the resultant costs. No extra compensation or added time for any additional repairs or alterations will be allowed without approval in writing by the Owner's Representative for such additional or alterations before same are commenced.

22. Non Commission Clause:

22.1. The CONTRACTOR herewith confirm of not having paid respectively of not paying any commissions or kick-backs to third parties such as ship's staff, staff of Ship Management or Superintendents. Rebates, if any, will be granted only officially on the final invoice to the OWNER. The CONTRACTOR is aware that non compliance of this clause may automatically result in blacklisting of the CONTRACTOR for future business and OWNER reserve the right in claiming refund from CONTRACTOR of any kick-backs paid.

23. Execution:

23.1. In case of any disagreements or differences between the text of this agreement, tender, and or any other document, which make part of this agreement, the text of this agreement shall prevail.

Meeting Schedules
Daily, at an agreed time, the Contractors shall arrange a meeting between the Contractors' Yard's supervisors, the Owners' Representative and Vessel's staff. The agenda of his daily meeting is to include but is not limited to:
- Review of Safety & Environmental Protection on the vessel and in the Contractors Yard.
- Progress of the work list items.
- Items of work to be carried out on that day.
- Modifications to the Specification Works.

Full list of items ready for inspection on that day, including the inspection schedule

24. Guarantees by CDM:

24.1. CDM will guarantee all the necessary insurance, equipment, material and personnel for the CONTRACTOR to complete this contract. In case the CONTRACTOR fails to execute its responsibilities and obligations out of this contract the CDM will accept all the liabilities as if it were its own.

Signed by: _____

_____
For and on behalf of:
CDM

_____
For and on behalf of:
Church of Scientology Flag Ship
Service Org. Inc
C/O Freewinds
Maduro Plaza
Curacao, Netherlands Antilles

*Note: Actual Repair to be agreed upon after first meeting. The indicated twelve days to be amended.*

11