## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 06-22128-CV-KING/MCALILEY

ALBERTO JUSTO RODRIGUEZ LICEA,
FERNANDO ALONSO HERNANDEZ, AND
LUIS ALBERTO CASANOVA TOLEDO,

      Plaintiffs/Judgment Creditors,

vs.

CURACAO DRYDOCK COMPANY, INC., A/K/A
CURACAOSE DOKMAATSCHAPPIJ NV, A/K/A
CDMNV,

      Defendant/Judgment Debtor.
_____/

### FSSO'S CORRECTED MOTION TO STRIKE AND OBJECTION TO NOTICES OF EXTENSION OF WRIT OF GARNISHMENT AGAINST FSSO

Garnishee, Church of Scientology Flag Ship Service Organization, Inc., (FSSO), by and through undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Civil Procedure and Florida Statute, §§77.01, *et. seq*., hereby moves to strike and objects to Plaintiff/Judgment Creditor's Notice of a second Extension of Writ of Garnishment against FSSO and states:

### PROCEDURAL HISTORY

1. On October 9, 2013, Plaintiffs served a Writ of Garnishment on FSSO (the "Writ"). [ECF No. 362].

2. On April 2, 2014, when the Writ was about to expire automatically pursuant to Fla. Stat. 77.07, Plaintiffs filed a "Certificate of Service of Notice of Extension of Writ of Garnishment Against FSSO". [DE 429]. This filing stated that a Notice of Extension had been served on FSSO by mail sent to its undersigned counsel. *Id.* The certificate of service filing did not include the Notice of Extension of Writ itself. *Id.*

3. Plaintiffs' Notice of Extension was eventually received by mail by FSSO's counsel, however, it contained a defective certificate of service in which Plaintiffs incorrectly certified that the document had been filed via the court's CM/ECF system on April 1, 2014, and "that a true and correct copy [of the document was]… being served this day via Notices of Electronic Filing Generated by CM/ECF, on counsel for all parties." *Plaintiffs' First Notice of Extension* attached hereto as **Exhibit 1**. Contrary to Plaintiffs' certification, the first Notice of Extension was never filed electronically and was never served on counsel by the CM/ECF system.

4. Pursuant to Florida's garnishment statute, serving a notice of extension gave Plaintiffs' an additional 6 months to move for dismissal or for final judgment.

5. However, when the extension was about to expire on October 2, 2014, instead of taking the action required by the law, Plaintiffs improperly filed yet another Certificate of Service of Notice of Extension of Writ of Garnishment Against FSSO purporting to extend the writ for yet another six months. [ECF No. 508].

6. As with the first Notice of Extension, the second notice was eventually received by mail FSSO's counsel. *Plaintiffs' Second Notice of Extension* attached hereto as **Exhibit 2.** However, similar to the first notice, Plaintiffs' second Notice of Extension also contained a defective certificate of service in which Plaintiffs incorrectly certified the document had been filed via the court's CM/ECF system and was being served via Notices of Electronic Filing, when in fact the document was never filed and was never served via Notices of Electronic Filing. *Id.*

7.   Plaintiffs never moved for final judgment or dismissal of the writ against FSSO, before the one-year period of the initial writ and the only extension authorized by statute expired.

## ARGUMENT AND MEMORANDUM OF LAW

Only one six month extension of a writ of garnishment is permitted by Section 77.07(5), Florida Statutes.  The Plaintiffs' second Notice of Extension should be stricken and the Court should find that the writ expired automatically after the expiration of the first extension on October 9, 2014.  Section 77.07(5), Florida Statutes, provides:

> If the plaintiff fails to file a dismissal or motion for final judgment within 6 months after filing the writ of garnishment, the writ shall automatically be dissolved and the garnishee shall be discharged from further liability under the writ. The plaintiff has the right to extend the writ for ***an additional 6 months*** by serving the garnishee and the defendant a notice of extension and filing in the underlying proceeding a certification of such service.

(Emphasis added).

Further, "[g]arnishment statutes are in derogation of the common law and must be strictly construed."  *Paz v. Hernandez*, 654 So. 2d 1243, 1244 (Fla. 3d DCA 1995) (internal citations omitted). *Ackerman Senterfitt & Eidson, P.A. v. Value Seafood, Inc.,* 121 So. 3d 83, 87 (Fla. Dis Ct. App. 2013) ("It is fundamental that garnishment statutes must be strictly construed.")

The plain language of Fla. Stat § 77.07(5) is unambiguous and contemplates only *one* ("***an***") six month extension of a writ, stating that a writ can be extended only by "***an*** additional 6 months".  Fla. Stat. § 77.07(5);   *Aetna Cas. & Sur. Co. v. Huntington Nat. Bank,* 609 So. 2d 1315, 1317 (Fla. 1992) (internal citations omitted) ("When the language of a statute is clear and unambiguous and conveys a clear meaning, the statute must be given its plain and ordinary meaning. …It must be assumed that the legislature knows the meaning of the words and has

3

expressed its intent by the use of the words found in the statute. The legislative history of a statute is irrelevant where the wording of a statute is clear.").  The plain meaning of "an" is one, not several, many, or unlimited.

The Florida Creditor's Rights Manual similarly sets out that plaintiffs have the right to only a single extension stating, "§ 77.07(5) gives the plaintiff the right to extend the writ for *an additional* six months", never alluding to the possibility that the writ might be extended more than once. *Florida Creditors' Rights Manual,* § 209[H] at 2-194 (2009) (emphasis added); *see also* 13 Fla. Jur. 2d, Creditor's Rights and Remedies § 186 ("The plaintiff has the right to extend the writ for *an additional* six months by serving the garnishee and the defendant a notice of extension and filing in the underlying proceeding a certification of such service.").  Indeed, the right to a single, limited extension to the writ is the only reading of the statue which gives meaning to each word, including the word "an", in Fla. Stat. 77.07(5).  *Hechtman v. Nations Title Ins. of New York,* 840 So. 2d 993, 996 (Fla. 2003) ("It is an elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.  *See Hawkins v. Ford Motor Co.,* 748 So.2d 993 (Fla.1999)").  To interpret the statute to allow serial extensions, and therefore an indefinite and possibly infinite period, would read the word "an" out of the statute, and would void the purpose of the legislature's specific limitation of six months on the initial writ and one ("an") additional six month enlargement, after which the garnishee is entitled to discharge.

Even if the language of Section 77.07(5) were somehow ambiguous, the legislative history shows that the intent of the legislature was to limit writs of garnishments to a total

4

effective period of 12 months.  Historically, the duration of a garnishment lien was effective from the date the writ was served and continued in force until the writ was discharged, either by termination of the action by a judgment in favor of a defendant or by payment of the judgment, 13 Fla. Jur. 2d, Creditors' Right § 115 (1979).  In 2005 for the first time, Section (5) was added to §77.07, which was amended "to provide for the automatic dissolution of a writ and discharge of a garnishee of liability and grants the plaintiff the authority to extend the writ for an additional 6 months." *See*, Florida Staff Analysis, S.B. 370, 4/4/2005, attached hereto as **Exhibit 3**.  Thus, the legislative history shows the statute evolved from allowing a writ to remain in force indefinitely to being subject to automatic dissolution and to a clear and unambiguous maximum effective period of one year.  To interpret the statute as allowing an unlimited number of six month enlargements would allow judgment creditors to subvert the statutes and keep a writ pending indefinitely, without ever moving for final judgment or dismissal.

Further, each of Plaintiffs' Notices of Extension of Writ are facially defective because of their defective certifications regarding service, which both contain factually incorrect certificates of service.  Exhibit 1-2.  Given that the garnishment statute must be strictly construed, this defect should be deemed fatal to both purported extensions, and the writ should be determined to have been dissolved as of the expiration of the initial six month period of the writ in April 2014.  Thus, the purported second extension is null and void on this ground as well.

Therefore, the writ against FSSO automatically dissolved on October 9, 2014, upon the expiration of Plaintiffs' initial 6 month extension, and the second notice of extension was a nullity under the statute because plaintiffs failed to move for final judgment within the required one-year period from service of the writ.  Plaintiffs' notices are also facially defective and should

be stricken because Plaintiffs' certifications therein regarding service are incorrect, and the writ must be dissolved on that basis as well.

WHEREFORE, Church of Scientology Flag Ship Service Organization, Inc., respectfully requests the Court strike Plaintiffs' Certificate of Service of Extension of Writ of Garnishment (ECF No. 508) and Notice of Extension of Writ of Garnishment (Exhibit 2) and find Plaintiffs' Writ of Garnishment (ECF No. 362) was automatically dissolved as of October 9, 2014.

### Rule 7.1 Conferral

Counsel for garnishee conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in this motion but has been unable to do so.

Dated: October 31, 2014   Respectfully Submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Garnishee*
355 Alhambra Circle
Suite 1100
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email:  Michael@Moore-and-co.com
Email:  Claynaughton@moore-and-co.com

    **/s/ Clay M. Naughton**
    Clay M. Naughton
    Florida Bar No. 29302
    Michael T. Moore
    Florida Bar No 207845

CASE NO.: 06-22128-CV-KING/MCALILEY

## <u>CERTIFICATE OF SERVICE</u>

I, HEREBY CERTIFY that on October 31, 2014, this document was electronically filed with the Clerk of the Court using CM/ECF and is thereby being served this day on all counsel of record identified on the following service list:

John Thornton, Esq.
Do Campo & Thornton, P.A.
Miami Tower
100 Southeast Second Street
Suite 2700
Miami, Florida 33131
Telephone:    (305) 358-6600
Facsimile:    (305) 358-6601
Email:        jt@dandtlaw.com
***Attorneys for Plaintiffs/Judgment Creditors***

                                          <u>/s/ **Clay M. Naughton**</u>
                                          Florida Bar No. 29302

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-22128-CV-KING/MCALILEY

ALBERTO JUSTO RODRIGUEZ LICEA,
FERNANDO ALONSO HERNANDEZ, AND
LUIS ALBERTO CASANOVA TOLEDO,

     Plaintiffs/Judgment Creditors,

vs.

CURAÇAO DRYDOCK COMPANY, INC., A/K/A
CURAÇAOSE DOKMAATSCHAPPIJ NV, A/K/A
CDMNV,

     Defendant/Judgment Debtor.

_____/

## PLAINTIFF/JUDGMENT CREDITOR'S NOTICE OF EXTENSION OF WRIT OF GARNISHMENT AGAINST CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.

YOU WILL PLEASE TAKE NOTICE that, pursuant to Plaintiff's Motion for Issuance of

Writ of Garnishment, the Clerk of the above-captioned Court issued a Writ of Garnishment on

October 7, 2013.  Pursuant to Section 77.07, *Florida Statutes*, Plaintiff hereby extends the writ

for an additional six (6) months, until October 7, 2014.

PLEASE GOVERN YOURSELF ACCORDINGLY.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 1st day of April 2014, the undersigned electronically executed the foregoing document with the Clerk of Court via the CM/ECF system, and that a true and correct copy is being served this day via Notices of Electronic Filing generated by CM/ECF, on counsel for all parties.

DO CAMPO & THORNTON, P.A.
Miami Tower
100 Southeast Second Street
Suite 2700
Miami, FL 33131
Phone: 305-358-6600
Fax: 305-358-6601

By: ___/s/ John Thornton, Esq._____
DO CAMPO & THORNTON, P.A.
John Thornton, Esq.
Orlando do Campo, Esq.
100 Southeast Second Street, Suite 2700
Miami, Florida 33131

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-22128-CV-KING/MCALILEY

ALBERTO JUSTO RODRIGUEZ LICEA,
FERNANDO ALONSO HERNANDEZ, AND
LUIS ALBERTO CASANOVA TOLEDO,

      Plaintiffs/Judgment Creditors,

vs.

CURAÇAO DRYDOCK COMPANY, INC., A/K/A
CURAÇAOSE DOKMAATSCHAPPIJ NV, A/K/A
CDMNV,

      Defendant/Judgment Debtor.

_____/

### PLAINTIFF/JUDGMENT CREDITOR'S NOTICE OF EXTENSION OF WRIT OF GARNISHMENT AGAINST CHURCH OF SCIENTOLOGY FLAG SHIP SERVICE ORGANIZATION, INC.

YOU WILL PLEASE TAKE NOTICE that, pursuant to Plaintiff's Motion for Issuance of

Writ of Garnishment, the Clerk of the above-captioned Court issued a Writ of Garnishment on

October 7, 2013.  Pursuant to Section 77.07, *Florida Statutes*, Plaintiff hereby extends the writ

for an additional six (6) months, until April 2, 2015.

PLEASE GOVERN YOURSELF ACCORDINGLY.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of October 2014, the undersigned electronically executed the foregoing document with the Clerk of Court via the CM/ECF system, and that a true and correct copy is being served this day via Notices of Electronic Filing generated by CM/ECF, on counsel for all parties.

> DO CAMPO & THORNTON, P.A.
> Miami Tower
> 100 Southeast Second Street
> Suite 2700
> Miami, FL 33131
> Phone: 305-358-6600
> Fax: 305-358-6601

> By:___ */s/ John Thornton, Esq.*___
> DO CAMPO & THORNTON, P.A.
> John Thornton, Esq.
> Orlando do Campo, Esq.
> 100 Southeast Second Street, Suite 2700
> Miami, Florida 33131

# EXHIBIT 3

FL S. Jour., 2005 Reg. Sess., No. 15

Journal of the Senate, 2005 Regular Session, Number 15

Thursday, April 14, 2005
Florida Senate
2005 Regular Session

## CONTENTS

Bills on Third Reading .................................................................................................... 445

Call to Order ...................................................................................................................... 438

Co-Introducers .................................................................................................................. 461

Committee Substitutes, First Reading ........................................................................... 455

House Messages, Final Action ........................................................................................ 461

House Messages, First Reading ...................................................................................... 460

Messages From the Governor .......................................................................................... 460

Motions Relating to Committee Reference ..................................................................... 454

Recommendation, Rules Chair ........................................................................................ 443

Remarks .............................................................................................................................. 445

Report, Committee on Rules and Calendar .................................................................... 445

Report, Senate General Counsel ...................................................................................... 440

Reports of Committees ...................................................................................................... 454

Resolutions ................................................................................................................................................................. 438

Special Order Calendar ................................................................................................................................................ 452

[See end of Journal for Bill Action Summary]

## CALL TO ORDER

The Senate was called to order by President Lee at 9:20 a.m. A quorum present--40:

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |

Dawson                              Miller


## PRAYER

The following prayer was offered by Senator Lynn:

Dear God of the universe, we pray to you for guidance as we consider the issues that will affect the many people we serve in our wonderful state.

We ask today that you watch over our armed forces, as they fight to protect us from the terrors that threaten our world today ... and as they seek to establish and maintain the many freedoms which we enjoy as citizens of our great nation.

God, we pray that you will help us solve the many problems that threaten our children and our elderly. And we ask for your blessings and assistance in supporting each and every one of us to be all that we can be ... and to do all the good we can do to make our state, our nation, and our world fulfill all your expectations.

In God's name, we pray. Amen.

## PLEDGE

Senate Pages Alexandra Bunker of Altamonte Springs; Jason Roberts of New Smyrna Beach; David Schultz of Ft. Myers; and Chelsey Severance, daughter of Donald Severance, Sergeant At Arms, of Tallahassee, led the Senate in the pledge of allegiance to the flag of the United States of America.

## DOCTORS OF THE DAY

The President recognized Dr. Ricardo Requena of Clearwater, sponsored by his brother-in-law, Senator Villalobos, and Dr. Stephanie Haridopolos of Melbourne, sponsored by her husband, Senator Haridopolos, as doctors of the day. Dr. Requena specializes in Otolaryngology/Facial Plastic Surgery and Dr. Haridopolos specializes in Family Practice.

## ADOPTION OF RESOLUTIONS

On motion by Senator Crist--

By Senators Crist and Miller--

**SR 1046**--A resolution recognizing April 14, 2005, as Lowry Park Zoo Day in Tallahassee.

WHEREAS, the 2004 Legislature recognized the Lowry Park Zoo, a not-for-profit corporation located in Hillsborough County, as a state center for Florida species conservation and biodiversity, and

WHEREAS, the Lowry Park Zoo is the only licensed not-for-profit manatee rehabilitation facility in the world, and

WHEREAS, the only zoo where six endangered species (the Florida panther, red wolf, Florida manatee, whooping crane, Key Largo wood rat, and Key deer) can be seen in one place, the Lowry Park Zoo is host to an inventory of 1,600 animals, and

WHEREAS, the Lowry Park Zoo is Florida's best-attended, not-forprofit attraction and features a year-round education

center popularly known as "The Zoo School," with early child care and preschool education, and

WHEREAS, Child Magazine recognized the school as the "Number One Zoo in the United States for Kids," a distinction based on the strict criteria and data compiled after an extensive 5-month investigation of more than 150 institutions belonging to the American Zoo and Aquarium Association, and

WHEREAS, Lowry Park Zoo has an estimated annual economic impact of more than $72 million, with 80 percent of its annual $12-million budget based on earned revenue, NOW, THEREFORE,

*Be It Resolved by the Senate of the State of Florida:*

That the Senate recognizes April 14, 2005, as Lowry Park Zoo Day in Tallahassee in recognition of its outstanding work in providing exhibits and education on species conservation and biodiversity, as the Legislature concurrently celebrates "Hillsborough County Day" at the State Capital with the second annual "Flavors of Hillsborough" event.

BE IT FURTHER RESOLVED that a copy of this resolution, with the seal of the Senate affixed, be presented to the Lowry Park Zoo as a tangible token of the sentiments of the Florida Senate.

--was introduced out of order and read by title. On motion by Senator Crist, **SR 1046** was read the second time in full and adopted.

On motion by Senator Crist--

By Senators Crist and Sebesta--

**SR 1960**--A resolution commending the Tampa Bay Lightning for their outstanding 2004 ice hockey season and Stanley Cup victory against the Calgary Flames.

WHEREAS, the National Aeronautics and Space Administration in 2002 declared Rwanda (in Central Africa) the "lightning capital of the world," and

WHEREAS, professional hockey's Tampa Bay Lightning unraveled the findings of those at NASA, unequivocally declaring on June 7, 2004, that Tampa is truly the "Lightning Capital of the World," as the Bolts extinguished the Calgary Flames in the seventh and final game for the Stanley Cup, and

WHEREAS, the team, 25 players strong, including captain Dave Andreychuk, with 22 years in the National Hockey League and holder of the NHL record of 270 power-play goals; Brad Richards, winner of the Conn Smythe Trophy and the Lady Byng Trophy; Martin St. Louis, winner of the Hart Trophy, the Pearson Award, and the Art Ross Trophy; Ruslan Fedotenko, who delivered both of Tampa Bay's goals in the final game; and goaltender Nikolai Khabibulin, who masterfully protected the one-goal lead in the third period, along with owner Bill Davidson, CEO Tom Wilson, president Ron Campbell, and general manager Jay Feaster, and

WHEREAS, the team arose from humble beginnings, playing in a barn at the Florida State Fairgrounds followed by three seasons in a baseball stadium, then skating to the ultimate hockey victory in the St. Pete Times Forum by being successfully challenged by head coach John Tortorella, who later won the Jack Adams Award as Coach of the Year, NOW, THEREFORE,

*Be It Resolved by the Senate of the State of Florida:*

That the Florida Senate congratulates the Tampa Bay Lightning on winning the 2004 Stanley Cup, making Tampa the home of the best professional hockey team in North America and keeping the Stanley Cup in the United States of America.

BE IT FURTHER RESOLVED that a copy of this resolution, with the Seal of the Senate affixed, be presented to the Tampa Bay Lightning as a tangible token of the sentiments of the Florida Senate.

--was introduced out of order and read by title. On motion by Senator Crist, **SR 1960** was read the second time in full and adopted.

At the request of Senator Sebesta--

By Senators Sebesta, Crist and Miller--

**SR 2010**--A resolution recognizing April 14, 2005, as "Hillsborough County Day" in Tallahassee.

WHEREAS, Hillsborough County was organized as a county in 1834 and is now comprised of some 1,050 square miles, with a current population exceeding 1.1 million people, and

WHEREAS, the county is home to three municipalities, including Plant City, chartered in 1885; Tampa, chartered in 1887; and Temple Terrace, chartered in 1925, and

WHEREAS, Hillsborough County is a multicultural, diverse community, a microcosm of the State of Florida offering a breadth of available lifestyles, including a strong urban core, a smaller group of Main Street municipalities, a flourishing suburbia, community living for the active elderly, and sufficient rural areas for those who choose more pastoral or agrarian lifestyles, with the average price of housing running at $183,000, and

WHEREAS, Hillsborough County is the western anchor of the burgeoning I-4 corridor and is the state's epicenter of business and commerce, creating over 25,000 jobs in 2004, dropping its unemployment rate almost to the prerecession level of 2.9 in early 2001, and projecting an increase in effective buying income of 26 percent by 2009, and

WHEREAS, Hillsborough County has a wealth of cultural facilities and programs, including Lowry Park Zoo, the Number One Children's Zoo in America, with an estimated regional economic impact of $72 million, and the Tampa Bay Performing Arts Center, which is one of the top 20 performing arts centers in America on number of tickets sold in 2004 with an estimated regional economic impact in the region of $93 million, NOW, THEREFORE,

*Be It Resolved by the Senate of the State of Florida:*

That April 14, 2005, is recognized as "Hillsborough County Day" as the Senate celebrates the "Flavors of Hillsborough" at the State Capitol.

--**SR 2010** was introduced, read and adopted by publication.

At the request of Senator Jones--

By Senator Jones--

**SR 2732**--A resolution recognizing April 2005 as "Cancer Control Awareness Month."

WHEREAS, cancer will strike approximately one out of two men and about one out of every three women in the course of their lives, and

WHEREAS, cancer accounts for one out of every four deaths, and is the leading cause of death, and

WHEREAS, the American Cancer Society estimates that more than 96,200 new cases of cancer in Florida will be diagnosed and more than 39,960 Floridians will die from cancer during the year 2005, and

WHEREAS, many cancers can be prevented by lifestyle changes, or cured if detected early and treated promptly, and

WHEREAS, as many as one-third of the cancer deaths expected in Florida this year will be related to nutrition, physical inactivity, obesity, and other lifestyle factors, and thus may have been prevented, and

WHEREAS, almost half of all Floridians who continue to smoke may expect to die prematurely from lung cancer or other tobacco-related diseases, and

WHEREAS, 30 percent of all cancer deaths and 87 percent of all lung cancer deaths are caused by smoking cigarettes or other tobacco products, and

WHEREAS, the 5-year survival rate for all cancers combined is 64 percent, but survival rates may increase significantly for certain cancers such as breast, cervical, and colorectal cancers when they are detected and treated early, and

WHEREAS, rates of cancer incidence and death in Florida may be significantly reduced with increased awareness of the American Cancer Society's cancer-screening guidelines and compliance with those screening guidelines, and

WHEREAS, promotion of Cancer Control Awareness Month and statewide cancer control initiatives, such as the Florida Dialogue on Cancer sponsored by the American Cancer Society, may assist Florida in significantly reducing the burden of cancer faced by Floridians and the state, NOW, THEREFORE,

*Be It Resolved by the Senate of the State of Florida:*

That the month of April 2005 is recognized as "Cancer Control Awareness Month" in Florida and all Floridians are urged to understand the risks associated with cancer, change behaviors that increase their cancer risks, and follow the American Cancer Society's cancer-screening guidelines.

--**SR 2732** was introduced, read and adopted by publication.

## REPORT OF THE SENATE GENERAL COUNSEL

Tom Lee                                                                                        April 11, 2005

President of the Senate

409 Capitol

404 S Monroe Street

Tallahassee, FL 32399-1100

Re: South Africa Ports Mission Inquiry; Senator Mandy Dawson

Dear President Lee:

The task you assigned to me one month ago was to conduct a thorough but expeditious investigation of the facts and circumstances of Enterprise Florida's January 27-February 6, 2005 Ports Mission trip to the Republic of South Africa. My inquiry was to cover the trip's purpose, organization, and financing, with emphasis on the pre-trip solicitation allegedly conducted by Senator Mandy Dawson.

Pursuant to your letter of instructions, the attached written report contains my factual conclusions. This report contains no conclusions or recommendations. It ends with a concise summary of the statutes and Senate Rules that could apply, both to senators and to the lobbyists involved.

Sincerely,

*D. Stephen Kahn*

Senate Counsel

BACKGROUND

The January 27-February 6, 2005 Ports Mission to the Republic of South Africa was primarily the result of the efforts of Enterprise Florida, Inc., the Florida Caucus of Black State Legislators, Inc., and the Florida Ports Council, Inc., a non-profit trade group comprised of the managers of Florida's 14 deepwater seaports.

In 2001, shortly after Enterprise Florida established its contract position of African Trade Development Director in Johannesburg, Lieutenant Governor Frank Brogan led Florida's first "official" trade delegation to South Africa.

Then, in August 2001, a delegation representing South African seaports, including the CEO of the entity that operates all of them, visited eight Florida ports: Port Everglades, Port of Palm Beach, Port Canaveral, JAXPORT, Port of Panama City, Port of Pensacola, Port of Tampa, and the Port of Miami.

On October 4-11, 2003, another Enterprise Florida organized trade mission visited South Africa. State Representative "Ed" Jennings, Jr., participated. South African officials suggested a reciprocal mission by the Florida ports. Representative Jennings then approached the Florida Ports Council and Enterprise Florida and asked them to work together to organize a subsequent Florida mission to South Africa focusing on sea cargo development.

In January 2004, representatives from Enterprise Florida attended a meeting of the Florida Ports Council. Based on a consensus of the port directors, Enterprise Florida planned a May-June follow-up mission to some of the seaports in South Africa. That trip was first postponed to November 5-13, 2004, and then postponed again to January 27-February 6, 2005. Its focus would be to promote Florida as the "Gateway" for trade between Africa and the Americas. There were 31 Florida participants: port representatives (sea and air), private sector entrepreneurs, a city councilman, a county commissioner, eight state legislators and their four guests, and miscellaneous staff.

The state legislators traveling were: Senators Dawson, Hill, and Wilson; and State Representatives Bendross-Mindingall, Cusack, Gibson, Jennings, and Peterman.

<u>THE ITINERARY</u>

The group departed from Atlanta on the afternoon of Thursday, January 27, 2005, and after a brief stop in Capetown, proceeded to Johannesburg. On arrival, there were introductions and welcoming remarks from various South African and United States officials. The group was accommodated at the nearby Gauteng Park Hyatt Hotel where they spent their first night in South Africa.

On Saturday morning the group took a very early flight to Durban and traveled to a safari lodge at Hluhluwe, KwaZulu Natal, about 1 hour north of Richard's Bay. The members passed the afternoon at a workshop briefing and had the remainder of Saturday and all of Sunday at leisure. As the flight to South Africa was long and the time is 7 hours ahead of Florida, the weekend gave the delegates the opportunity to prepare for the rest of the Mission.

Monday morning representatives of four Florida ports made presentations at the Africa-America Gateway Conference, a major event cosponsored by the Florida Ports Council, Inc., Citrix Systems, Inc., the South Africa National Ports Authority, and South African Port Operations. There was national press coverage of this event and a capacity audience of over 200 people from major shipping lines, public and private sector leaders from all over South Africa, and logistics agencies and port personnel. The group visited the Port of Richard's Bay, heard presentations and attended business meetings followed by a mid-day port tour. Monday night lodging was at the Hilton Durban Hotel.

Tuesday morning the group visited the Port of Durban where they heard presentations on cargo operations, agriculture opportunities, the impact of U.S. antiterrorism measures on trade, cruise operations, and port real estate. They attended a business meeting followed by a port tour. The day was capped by the signing of a sister seaport agreement between the Port of Miami and the Port of Durban. The group lodged Tuesday night at the Hilton Durban Hotel.

Wednesday morning the group departed at 4:30 a.m. to fly to Port Elizabeth where they followed a similar pattern: presentations on the benefits of doing business through Florida ports, business meetings, and a port tour. Then, the group went on a bus trip to Port Ngqura at Coega, for a presentation and tour of the new deepwater port facility under construction in the Eastern Cape Province, approximately 45 minutes northeast of Port Elizabeth. The group departed mid-afternoon for East London where they were accommodated overnight at the Regent Hotel and Conference Center.

TABULAR OR GRAPHIC MATERIAL SET FORTH AT THIS POINT IS NOT DISPLAYABLE

Thursday morning was spent at the Port of East London where the group had similar presentations, business meetings, a port tour, and optional manufacturing plant visits, followed by a mid-afternoon flight back to Johannesburg, a quick stop-over, and a flight on to Capetown where they were accommodated overnight at the Townhouse Hotel.

Friday morning featured a trip to Parliament, a tour of Capetown Harbour, presentations (including a significant key note address by the Western Cape Minister of Economic Affairs), business meetings, the signing of an agreement between the Port of Miami and the Port of Capetown, and a visit to the Victoria and Alfred waterfront area. Friday overnight, the group was accommodated at Capetown's Townhouse Hotel.

Saturday, the final full day in-country, was a day at leisure. The group split into two parts: the legislative delegation made the practically obligatory visit to the national memorial on Robben Island in Capetown Harbour. The business delegation visited some nearby winelands and the Africaans Taal Monument. The group reunited in the mid-afternoon for the flight back to Johannesburg and an evening departure to Atlanta.

The group arrived in Atlanta on Sunday, February 6, 2005.

<p style="text-align:center">THE BUDGET</p>

The $2,500 "participation fee" was a mandatory charge, established by Enterprise Florida, for every person traveling with the Mission. There were 13 travelers in the Florida legislative component of the 31-person mission: three senators, five house members, two legislative spouses, two traveling companions, and one legislative staff person. Each traveler was responsible for his or her own participation fee. In setting the participation fee at $2,500, Enterprise Florida factored in the $1,330 roundtrip airfare component charged by South African Airlines and the $933 hotel single room accommodation component. All participation fees collected and corporate sponsorships received toward the trip went into an Enterprise Florida account. All funds collected beyond the actual per person cost for hotels and airfare went toward general and common trip expenses such as ground transportation, group meals and snacks, luggage and personnel transfers, admission fees, transit taxes, conference room hire, tourist guide services, and so on. All spouses and traveling companions, including those from the private sector who shared a double room with their host, were charged the same $2,500 participation fee. All excess amounts, after airfare and hotel bills, were likewise used by Enterprise Florida for common expenses of the trip.

In addition to the $2,500 per person participation fees, Enterprise Florida solicited and received three corporate sponsorships: $1,000 from the Miami-Dade County Aviation Department; $1,500 from the Florida Ports Council, Inc.; and $5,000 from Citrix Systems, Inc. There were also some sponsorships and trip expenses paid by various South African entities.

<p style="text-align:center">WHO PAID WHOSE PARTICIPATION FEES AND HOW</p>

Representative Bendross-Mindingall paid her $250 deposit with a personal check and the $2,250 balance with a check written on her §106.141(5) separate office account.

Representative Cusack paid the $500 deposit for her party of two with a personal check, $2,500 of the balance with a personal check and the remainder with a $2,000 charge on her husband's personal VISA card.

Mr. Davis, the legislative staff person, paid his $250 deposit with a personal money order and the $2,250 balance with his personal VISA credit card.

Senator Dawson's and her traveling companion's $5,000 participation fees were paid to Enterprise Florida by the Caucus using a Caucus check dated January 12, 2005. Actually the check paid for 3 Dawson-related participation fees, however, Senator Dawson's daughter who had signed up to go, decided not to but that decision was made after her participation fee had already been paid to Enterprise Florida by the Caucus. Repayment of the Caucus for Miss Dawson's $2,500 participation fee is now an issue between the Caucus and Senator Dawson and/or her daughter.

Representative Gibson paid her $250 deposit with a check drawn on her §106.141(5) separate office account. She paid the

$2,250 balance with a check drawn on that same account.

Senator Hill paid his $2,500 participation fee as part of a $3,000 check to the Caucus, drawn on his political campaign account, written in conjunction with closing out that account on October 11/12, 2004. The Caucus then on January 12, 2005, passed through Senator Hill's $2,500 participation fee to Enterprise Florida from the $3,000 "donation" it had received from Senator Hill in October 2004.

Representative Jennings, Chairman of the Caucus, was accompanied on the trip by his mother. He paid one $250 deposit with a check drawn on his open political campaign account and the second $250 deposit with a check drawn on his intradistrict office account. The $4,500 balance was paid to Enterprise Florida by the Caucus with a Caucus check that he and the Caucus Executive Director signed. Around March 15, 2005, Representative Jennings tendered a $2,250 undated personal check to the Caucus, apparently to reimburse the Caucus for the balance of his mother's participation fee that it had paid. Thus, $2,250 of Chairman Jennings' own participation fee was ultimately paid by the Caucus as a perquisite of the office of its chairman and in apparent recognition of his leading role in organizing and leading the legislative participants on this Mission.

Representative Peterman paid the entire participation fee for himself and his spouse with a $5,000 personal check. Then on December 8, 2004, he reimbursed himself for his $2,500 participation fee from his §106.141(5) separate office account.

Senator Wilson paid her $933 hotel accommodations invoice received from Enterprise Florida with a check drawn on her §106.141(5) separate office account. She used her personal American Express credit card to pay $1,731.96 to South African Airways. Senator Wilson decided to go after the group tickets had been purchased. She had to make separate arrangements to pay Enterprise Florida for the $933 cost of her hotel accommodations, and pay directly to South African Airways, $1,731.96, a price that was $401.96 in excess of the $1,330 "group" airfare rate. On March 7, 2005, Senator Wilson reimbursed herself $2,664.96 from her §106.141(5) separate office account.

The above list may not be complete because reimbursements from §106.141(5) separate office accounts for personal funds advanced for this trip's participation fees are not required to be postmarked or delivered to the Department of State until today, April 11, 2005.

### SENATOR DAWSON'S SOLICITATIONS

Senator Dawson used two methods to solicit the funds to cover her $2,500 "participation fee" for this trip.

Method One

On January 3, 2005, while in her Fort Lauderdale district office, Senator Dawson drafted the text of a letter in longhand on a legal pad. The final letter, a copy of which is attached to this report as Exhibit "A", states that she had been "offered a wonderful opportunity to travel to South Africa as part of the Florida Ports Mission." The letter's second paragraph repeats a statement of the trip's purpose practically verbatim from a preliminary one-page trip fact sheet provided by Enterprise Florida to all the potential travelers. Her letter's third paragraph contains a solicitation for $2,500 "to help defray the cost" of "a once-in-a-lifetime opportunity [for her] to participate." The senator's letter then states that "due to ethics regulations, the check should be made out to the FL Caucus of Black State Legislators." The letter concludes with a request for a prompt reply, a note of thanks, and a "look forward to working with you in the future."

Senator Dawson handed her draft of the letter to her chief legislative assistant with instructions to type it. They briefly discussed to whom the letter would be sent. There were three or four "regulars" who would automatically go on such a list and then the senator specified, by name, the remaining five or six persons who were to be added. Her legislative assistant hesitated, pointing out to Senator Dawson the possible misuse of official Senate letterhead such as this and the reference to "ethics regulations" but, after briefly discussing it with the senator, did what she was told to do - type it. The legislative assistant may have corrected a spelling or grammar error or two. The assistant then signed the senator's name to nine letters and faxed them, or supervised the faxing of them, to the following 9 persons:

| | |
|---|---|
| Ronald Book: | Mr. Book received the January 3rd letter by fax, hesitated over it a while, but felt obliged to respond with something because of the personalized nature of the solicitation and his |

generally positive relationship with Senator Dawson and the Caucus. On or about Friday, January 7, 2005, he hand wrote a $1,500 check on his law office operating account, payable to the Caucus as the solicitation letter had suggested, and had it mailed to Senator Dawson's district office in Fort Lauderdale with a cover letter signed by his secretary. When the letter and check were received there a day or so later, probably on Monday, January 10, 2005, one of Senator Dawson's other legislative assistants opened the envelope, saw that the check was payable to the Caucus, stuffed it all (check and cover letter) back into a new envelope, and mailed it to the Caucus office in Tallahassee.

The check was deposited into the Caucus bank account on or about January 26, 2005. There was no understanding that this $1,500 check was intended for anything other than Senator Dawson's trip expense. Mr. Book wrote the check in direct response to the January 3rd solicitation letter.

| | |
|---|---|
| Yolanda Cash Jackson: | Acknowledged receiving the solicitation letter, read it, discarded it, hasn't discussed the issue with Senator Dawson, and hasn't made and knows of no payments made, directly or indirectly, in response to it. |
| Jorge Dominicis: | Did not receive the solicitation letter because it had been faxed to the office of his former employer. He has not discussed the issue with Senator Dawson. He hasn't made and knows of no payment made directly or indirectly in response to it. Neither has his successor at the company, Gaston Cantens. |
| W. Michael Goldie: | Acknowledged receiving the solicitation letter, hasn't discussed the issue with Senator Dawson, and hasn't made and knows of no payment made directly or indirectly in response to it. |
| Paul W. Hamilton: | Acknowledged receiving the letter, hasn't discussed the issue with Senator Dawson, and hasn't made and knows of no payment made directly or indirectly in response to it. |

| Robert E. Hawken: | Acknowledged receiving the solicitation letter and discarded it upon receipt, hasn't discussed the issue with Senator Dawson, and hasn't made and knows of no payment made directly or indirectly in response to it. |
|---|---|
| | His client, FCCI Services, Inc., did give a $2,500 "political contribution" to the Caucus for its general good works, which check he delivered to the Caucus Executive Director around the beginning of March 2005, in conjunction with the Caucus Gala event. The amount of the check is generally consistent with FCCI's prior annual levels of general support for the Caucus. |
| Dr. Alan Mendelsohn: | Didn't see and never heard of the solicitation letter but he did get a personal phone call from Senator Dawson. She asked him to be a $2,500 sponsor and she explained the purpose. Dr. Mendelsohn instructed the treasurer of Ophthalmology PAC, his registered committee of continuous existence, to prepare a $2,500 Ophthalmology PAC check. It is dated January 25, 2005, and is payable to the Caucus. The Caucus deposit ticket is dated February 11, 2005. |
| William D. Rubin: | Doesn't recall seeing the solicitation letter, hasn't discussed the issue with Senator Dawson, and hasn't made and knows of no payment made directly or indirectly in response to it. |
| Paul B. Sanford: | Received the solicitation letter, hasn't discussed the issue with Senator Dawson, and hasn't made and knows of no payment made directly or indirectly in response to it. |

Method Two

In either late November or very early December 2004, about a month before the date of her January 3rd general solicitation letter, Senator Dawson informally discussed her upcoming South African travel opportunity with Larry Williams, the designated lobbyist for R.J. Reynolds Tobacco Company. Senator Dawson followed her conversation with a personally-signed letter dated December 2, 2004. Attached to that brief letter, a copy of which is attached to this report as

Exhibit "B", were three pages of trip information, including an explanation of the $2,500 participation fee requirement. Her letter stated "As I mentioned, sponsorship contributions should be made payable to the [Caucus] with a notation including my name." She closed the letter with an assurance that she would "truly appreciate" his support.

Mr. Williams faxed Senator Dawson's letter, written on official Senate letterhead, to R.J. Reynolds Tobacco Company in Winston-Salem. Four business days later, R.J. Reynolds Tobacco Company wrote a $1,000 check payable to the Caucus but mailed it to Senator Dawson's office at 410 Senate Office Building. When received there, someone called the Caucus Executive Director who came to the Capitol to pick it up. The $1,000 R.J. Reynolds check is shown on a Caucus deposit slip dated January 11, 2005.

Thus, Senator Dawson's and her traveling companion's $5,000 participation fees were quite coincidentally set off exactly by the $5,000 she raised as a result of her solicitations: $1,000 received from R. J. Reynolds Tobacco Company; $1,500 received from Mr. Book; and $2,500 received from Dr. Mendelsohn's Ophthalmology CCE.

<div align="center">WHO'S WHAT</div>

Enterprise Florida, Inc., created by §288.901, Florida Statutes, is a registered legislative principal with 12 registered legislative lobbyists.

Florida Ports Council, Inc., a Florida not-for-profit corporation, is a registered legislative principal with 5 registered legislative lobbyists.

The Florida Caucus of Black State Legislators, Inc., does business under the fictitious name of the Florida Conference of Black State Legislators. It is a Florida not-for-profit corporation with tax exempt status under Section 501 of the Internal Revenue Code.

The Republic of South Africa has no registered lobbying representation before either house of the Florida Legislature.

The Miami-Dade County Aviation Department has indirect legislative lobbying representation; first as a division of Miami-Dade County with 37 registered legislative lobbyists, and as a member of the Florida Airports Council with 4 registered legislative lobbyists.

Citrix Systems, Inc., a Florida corporation, is a registered legislative principal with 6 registered legislative lobbyists.

Ronald Book is a registered legislative lobbyist with 60 registered lobbying principals.

Yolanda Cash Jackson is a registered legislative lobbyist with 22 registered lobbying principals.

Jorge Dominicis was at relevant times employed by, or is currently employed by corporations that between them, directly or indirectly, have 12 registered legislative lobbyists.

W. Michael Goldie is a registered legislative lobbyist with 6 registered lobbying principals.

Paul W. Hamilton is a registered legislative lobbyist with 1 registered lobbying principal.

Robert E. Hawken is a registered legislative lobbyist with 3 registered lobbying principals.

Dr. Alan Mendelsohn is not a registered legislative lobbyist but apparently has the authority to direct the political expenditures of Ophthalmology PAC, a committee of continuous existence registered under Chapter 106, Florida Statutes.

William D. Rubin is a registered legislative lobbyist with 25 registered lobbying principals.

Paul B. Sanford was a registered legislative lobbyist for the year 2004. He had 11 registered legislative principals. He has not yet registered for 2005 but is nevertheless a legislative lobbyist as that term is used in Chapter 112, Florida Statutes.

<div align="center">SUMMARY OF STATUTES AND SENATE RULES OF POSSIBLE APPLICATION IN SENATOR DAWSON'S CASE</div>

| | |
|---|---|
| §112.3148(3), Florida Statutes | Prohibits a senator from soliciting any "gift" from a lobbyist or a lobbyist's principal, or from a committee of continuous existence, where such gift is for the personal benefit of the senator or any member of the senator's immediate family. |
| §112.3148(2), Florida Statutes | "Immediate family" means any parent, spouse, child, or sibling. |
| §112.3148(4), Florida Statutes | Prohibits a senator or any person on his or her behalf from accepting, directly or indirectly, a gift from a committee of continuous existence, or from a lobbyist who lobbies the Legislature; or directly or indirectly on behalf of the partner, firm, employer, or principal of a lobbyist, if the senator knows or reasonably believes that the gift has a value in excess of $100. |
| §112.312(12), Florida Statutes | Gift includes intangible personal property [i.e. money], transportation, use of real or tangible property, food, beverage, or any similar thing having an attributable value, that is not specifically exempted by §112.312(12)(b), Florida Statutes. |
| §112.3148(7)(b), Florida Statutes | In determining the value of the gift, compensation provided by the donee to the donor, if provided within 90 days after receipt of the gift, is to be deducted from the value of the gift. |
| §112.317(3), Florida Statutes | The penalties prescribed by the Code of Ethics do not limit the power of either house of the Legislature to discipline its own members. |
| §106.141(5), Florida Statutes | Unspent political campaign contributions, transferred to a separate office account, can be used only for "legitimate expenses" in connection with the [legislator's] public office including "travel expenses incurred by the officer or a staff |

member."

| | |
|---|---|
| Senate Rule 1.35 | Every Senator is required to maintain the integrity of his or her office. |
| Senate Rule 1.42 | A Senator determined to have violated the requirements of the Rule regulating ethics and conduct may be censured, reprimanded, or expelled, by a two-thirds vote of the Senate, on recommendation of the Committee on Rules and Calendar. |
| Senate Rule 11.2 | The Senate may waive a Senate Rule by twothirds vote of those Senators present. |
| Senate Rule 14.1(3) | Official Senate stationery may be used only in connectin with official Senate business. |

## SUMMARY OF STATUTES AND SENATE RULES OF POSSIBLE APPLICATION TO A LOBBYIST IN THE CONTEXT OF THIS CASE

| | |
|---|---|
| §112.3148(5)(a), Florida Statutes | Prohibits a committee of continuous existence, or a lobbyist who lobbies the Legislature, or a principal of a lobbyist, or anyone on behalf of the lobbyist, partner, firm, principal, or employer of the lobbyist, from giving, either directly or indirectly to the senator or to any other person on the senator's behalf, a gift that has a value in excess of $100. |
| §112.312(12), Florida Statutes | Gift includes intangible personal property [i.e. money], transportation, use of real or tangible property, food, beverage, or any similar thing having an attributable value, that is not specifically exempted by §112.312(12)(b), Florida Statutes. |

| Senate Rule 9.2(2) | A lobbyist, by personal example and admonition to colleagues, is obliged to uphold the honor of the legislative process by the integrity of his or her relationship with legislators. |
| --- | --- |
| Senate Rule 9.6 | A person determined to have violated the requirements of this Rule shall be censured, reprimanded, placed on probation, or prohibited from lobbying for the duration of the session, and from appearing before any committee of the Senate. |

*EXHIBIT "A"*

Mr. Ronald L. Book                                              January 3, 2005

2999 NE 191st Street, PH6

Aventura, FL 33180

Dear Ron:

As a member of the Florida Caucus of Black State Legislators, I have been offered a wonderful opportunity to travel to South Africa at the end of this month as part of a Florida Ports Mission.

This mission is part of the strategy to develop Florida as "The Gateway to the Americas" for Africa. According to the US Commercial Service, South Africa is among the easiest markets in the world to enter for US companies and it has by far the largest economy of the African continent.

This is a once-in-a-lifetime opportunity for me and in order to participate, I need to raise funds to help defray the cost. As a longtime supporter of mine, I am asking if you would consider helping to sponsor my trip. I would like to request $2500, if a all possible. Due to ethics regulations, the check should be made out to the FL Caucus of Black State Legislators. Unfortunately, since the trip is scheduled for January 27th, time is of the essence, and I hope I will hear from you as soon as possible to let me know if you can assist me.

Thank you in advance and, as always, I look forward to working with you in the future.
    With kind regards,
    *M. Mandy Dawson*
    Florida State Senator
    District 29

*EXHIBIT "B"*

Mr. J. Larry Williams                                          December 2, 2004

PO Box 1877

Tallahassee, FL 32303-1877

Dear Larry:

As per our conversation, enclosed please find information about the Florida Ports Mission to South Africa.

As I mentioned, sponsorship contributions should be made payable to the Florida Caucus of Black State Legislators, with a notation including my name.

I truly appreciate your support.
    With kind regards,
    *M. Mandy Dawson*
    Florida State Senator
    District 29

**MOTION**

On motion by Senator Pruitt, by two-thirds vote, the provisions of Rule 1.42 were waived.

<div align="center">

**RECOMMENDATION OF THE CHAIR OF THE COMMITTEE ON RULES AND CALENDAR**

</div>

Tom Lee                                    April 13, 2005

President of the Senate

409 Capitol

404 S Monroe Street

Tallahassee, FL 32399-1100

Dear Mr. President:

Thank you for forwarding Mr. Kahn's report to me for my review. I have completed that review and have three preliminary points to make:

1. This is only the third time in 30 years that the Florida Senate will have been called on to consider disciplining one of its own members for violation of the statutory code of ethics or the Senate's Rules on ethics and conduct.

2. Under the normal disciplinary process, a case against a senator is triggered by the filing of a sworn complaint. To the best of my knowledge, no such complaint has been filed in this matter against Senator Dawson; but, rather than waiting for a sworn complaint to be filed, you determined that it would be preferable to self-start the inquiry, to get it done expeditiously

and thoroughly, and to present the findings of fact to the Senate for disposition this session. Of course, there is nothing to prevent some person from filing a complaint with the Florida Ethics Commission, for the Commission to investigate that complaint (taking its normal 9-12 month processing cycle) at the end of which, the Commission's only permissible action would be to file a public report. At most, a Commission report would end up precisely where we are now, only up to a year from now.

3. Senator Dawson has been advised of her right to request a full hearing before the Committee on Rules and Calendar. She has communicated her desire to waive that right. She has agreed to submit herself to the judgment of the Florida Senate.

As for the application of the law and Senate Rules to Mr. Kahn's findings of fact regarding Senator Dawson, it is my view that:

1. Section 112.3148(3), Florida Statutes, is the first statute to consider. In order to find a violation of that statutory prohibition, the Senate is required to find by a preponderance of evidence that Senator Dawson in fact solicited something of value from someone in the socalled "prohibited class" (someone in the lobbying corps, or from that lobbyist's principal, or from a CCE); and that the solicitation was for her *personal benefit* or that of her immediate family, or for the *personal benefit* of any person who files financial disclosure. The unresolved issue here is whether the solicitation was for her *personal benefit*. In my view, the trip to South Africa had a hybrid purpose. While there undoubtedly was some public benefit from the trip (in the two sister-to-sister seaport agreements signed, the discussions of future cargo, cruise line and miscellaneous trade relations between Florida's and South Africa's ports, the private business contacts made by the private entrepreneurs who were part of the delegation, and perhaps even the goodwill engende red between the delegation members and their South African hosts), Senator Dawson's trip also had a substantial and obvious personal benefit to her. To the extent that it did, in my view, she violated the statute.

2. Section 112.3148(4), Florida Statutes, the other statute to consider, contains the prohibition against a senator directly or indirectly accepting a gift in excess of $100 in apparent value from a lobbyist, or a lobbyist's principal, or from a CCE. I think that Senator Dawson's written instructions to each of the solicited individuals for them to make their $2,500 checks for her trip payable to the FL Caucus of Black State Legislators "because of ethical regulations" was an apparent attempt to avoid a direct violation of this statutory prohibition. Whether the checks were payable to the Caucus or payable to her personally, it clearly was her intention that the funds would be used to pay her $2,500 trip participation fee. It is my view that Senator Dawson accepted $5,000 as an indirect result of her solicitations, and that $5,000 was in fact applied toward her $2,500 trip participation fee and the $2,500 participation fee of her traveling companion.

As for the application of the law and rules to the persons paying in excess of $100 to or for Senator Dawson's benefit, it is my view that:

Section 112.3148(5), Florida Statutes, prohibited the solicited individuals' payments of $1,000, $1,500, and $2,500 respectively. In spite of Senator Dawson's emphasis of the public purpose of the trip, and the suggestions in her letters as to how the checks should be made payable, it is my view that the three persons in the prohibited class who responded with money had an affirmative duty to inquire further about the legality of the gift before paying the money. For instance, section 112.3148(10), Florida Statutes, contains an invitation for members who have any doubt about the legality of what they are about to do concerning the gift law, to ask our General Counsel for a written "safe harbor" letter of guidance. Members and lobbyists alike have since December 1990, taken advantage of the availability of this guidance, in both the Senate and in the House of Representatives. It is my view that the three donors in this case were careless in allowing themselves to be thrown off the track by Senator Dawson's solicitations, but that their conduct did not rise to the level of culpability and thus does not warrant punishment at this time under Senate Rule 9.

As for disposition of this case, it is my view that Senator M. Mandy Dawson violated both of the above statutes. It is further my view that her actions constituted a violation of Senate Rule 1.35 that requires a senator to maintain the integrity of his or her office. Such a violation invokes the penalty provisions in Senate Rule 1.42(2).

I recommend that Senator Dawson be disciplined by the Florida Senate.

The possible disciplinary actions provided in Rule 1.42(2) are censure, reprimand, or expulsion. It takes a 2/3 vote to administer the discipline.

Accordingly, I recommend:

a) that the Senate exercise its jurisdiction and prerogative to discipline one of its members: Senator M. Mandy Dawson;

b) that based upon Senator Dawson's waiver of her right to be heard by the Committee on Rules and Calendar, that formal

committee reference, hearing, and action be dispensed with;

c) that the Senate find that Senator M. Mandy Dawson violated sections 112.3148(3) and 112.3148(4), Florida Statutes, and Senate Rule 1.35;

d) that upon a waiver by the Senate of Senate Rule 1.42, that Senator M. Mandy Dawson be disciplined, in the absence of a sworn complaint, and administered the following punishment through adoption of a Senate Resolution:

1) a reprimand; and

2) removal from the Senate Committee on Ethics and Elections, effective immediately upon adoption of the Resolution by the Senate and continuing through the 2006 organization session of the Florida Legislature; and

e) that the record in this case, comprised of Mr. Kahn's report, this letter, and the Senate Resolution, be published in full in the Senate Journal.

Sincerely,

*Ken Pruitt*

Chair

## MOTION

On motion by Senator Pruitt, the recommendations contained in his letter of April 13 were approved by the Senate.

## CONSIDERATION OF RESOLUTION

On motion by Senator Pruitt--

By Senator Pruitt--

**SR 2754**--A resolution relating to State Senator M. Mandy Dawson, of the 29th Senate District of the State of Florida.

WHEREAS, in absence of a sworn complaint, on March 11, 2005, the President of the Senate directed Senate Counsel to conduct an investigation and to assemble the facts with which the Senate could determine whether State Senator M. Mandy Dawson had violated certain laws and Senate Rules relating to conduct and ethics, and

WHEREAS, that report was submitted to the Senate President on April 11, 2005, and

WHEREAS, that written report was forwarded to the Chairman of the Committee on Rules and Calendar for his recommendations as to further handling, and

WHEREAS, the Chairman of the Committee on Rules and Calendar has made and communicated his determination that between December 3, 2004, and February 6, 2005, State Senator M. Mandy Dawson violated subsections (3) and (4) of section 112.3148, Florida Statutes, and Senate Rule 1.35, and

WHEREAS, State Senator M. Mandy Dawson has waived her right to a hearing before the Committee on Rules and Calendar, has consented to the handling of this matter directly by the Senate without a sworn complaint, and has consented to the imposition of discipline by the full Senate, without further notice or hearing, and

WHEREAS, the Chairman of the Committee on Rules and Calendar has moved that the applicable Rules of the Senate be waived to allow the Senate to proceed forthwith, in absence of a sworn complaint, and in absence of a full hearing before any Committee of the Senate, NOW, THEREFORE,

*Be It Resolved by the Senate of the State of Florida:*

That M. Mandy Dawson, Senator, District 29, did, between December 3, 2004, and February 6, 2005, violate subsections (3) and (4) of section 112.3148, Florida Statutes, and Senate Rule 1.35, and

That Senator M. Mandy Dawson is hereby reprimanded for those violations, and

That Senator M. Mandy Dawson is hereby removed from the Senate Committee on Ethics and Elections effective immediately and continuing until the 2006 organization session of the Florida Legislature.

--was introduced out of order and read by title. On motion by Senator Pruitt, **SR 2754** was read the second time in full and adopted by twothirds vote.

## REMARKS

At the direction of the President, the following remarks were ordered spread upon the Journal:

**Senator Dawson:**--Mr. President, Senators, I thank you for allowing me this opportunity.

I wish to thank you, Mr. President, and the Rules Chair, Chairman Pruitt, for your expeditious attention and resolution to this issue. I want to also thank the members of this chamber for your support, both professional and personal, and hope that you will accept my humble and sincere apology if my actions have compromised the integrity of this body.

Please know that I hold sacred, and respect, the integrity of this Senate and its rules, which serve as our "bond of trust" to the public.

I was 12 years old when my parents purchased a home. With a home of our own, I wanted what many young people want at the first opportunity, a pet. So, off we went to the humane society, to find that perfect puppy.

After spending a couple of hours searching for that perfect dog, I came upon a litter of beagle pups. All were healthy, except for one who, unlike her brothers and sister, was tiny, frail and hairless. But I was told, if given a lot of love and attention and 2 baths a day, the little puppy would grow strong and as beautiful as any other beagle pup.

Well, I left the pound that day with that undernourished, frail and hairless pup; named her Ginger, and with committed compassion and love, raised one of the most beautiful beagles that I have ever seen.

In 1988 I joined Florida's legislative family as a legislative aide. I was a divorced mother raising 3 beautiful daughters and wanted to learn how to utilize this opportunity in order to help people in our state, just like I helped Ginger.

Between 1988 and 1992 there was a dramatic increase in the infection rate of a big disease with a little name - HIV/AIDS, which threatened the health, welfare and safety of the people of our state. Cocaine babies and downsizing was the beginning of a paradigm shift for our state.

In 1992, upon becoming elected to the legislature, I made a commitment to the citizens and asked for their trust and confidence in order to represent them through the process.

Since my first election in 1992, and ultimately being elected to this body in 1998, my commitment to serve and protect their interests has never, and will not, waiver.

My purpose for being a part of this trade mission was simple: to be a part of creating extended opportunities for our small businesses in this state, in the same way that Florida has with other European countries.

We watched South Africa fight for freedom, both personal and political, and its economics enabled an economic fairness for all of the citizens of its country.

They call it reconciliation - moving out of the past without blame, and forward into a productive future for all. I pledge that to you today.

In closing, I truly believe, in my heart of hearts, that although my path into this body is different, my constituents see my value and continue to support me, and for that I am eternally grateful. Sabownia and yabo--which is Zulu for "great happy day--go in happiness." That's my wish for you all--sabownia and yabo.

Thank you.

### REPORT OF THE COMMITTEE ON RULES AND CALENDAR

President Tom Lee                                                April 13, 2005

Office of the Senate President

409 Capitol

Tallahassee, Florida 32399-1100

Dear President Lee:

The Senate Committee on Rules & Calendar met on April 13, 2005, to consider the sworn complaint brought against Mr. Charles Brady by Ms. Linda Sims, Past President of the Florida State Court and County Law Librarian Association (the association).

Several key facts from the material presented to the committee should be highlighted:
Mr. Brady was hired by the association in March 2004, to represent them before the Florida Legislature, and a $6000 fee was paid to Mr. Brady's employer.
Mr. Brady has admitted, in writing, to lobbying "various members of the House and Senate" on behalf of the association during 2004 and has recognized that he was required to register as a lobbyist.
Mr. Brady was not registered as a legislative lobbyist for any principal during 2004.
Applicable state law and rules required that Mr. Brady list the association as his principal during 2004.

After consideration of the evidence and materials related to the sworn complaint, the Committee finds and recommends the following:
That Mr. Charles Brady did act as a paid legislative lobbyist in 2004 and did violate Senate Rule 9, Joint Rule 1, and section 11.045 (6), Florida Statutes, by failing to register as a lobbyist for the Florida State Court and County Law Librarian Association.
That Mr. Charles Brady be censured, that he be prohibited from lobbying until the conclusion of the 2006 legislative session, and that he be fined $2500, to be paid to the Chief Financial Officer within twelve months of the date of final Senate action on this matter.
Sincerely,
*Ken Pruitt*
Chair

**MOTION**

On motion by Senator Pruitt, the report of the Committee on Rules and Calendar was adopted.

<div align="center">

**BILLS ON THIRD READING**

</div>

**CS for SB 660**--A bill to be entitled An act relating to assets held in benefit plans; amending s. 222.21, F.S.; exempting certain tax-exempt funds or accounts from legal process in favor of creditors; amending s. 222.22, F.S.; exempting from legal process in favor of creditors or other claimants assets held in qualified tuition programs, in certain health savings accounts and medical savings accounts, in Coverdell education savings accounts, or in hurricane savings accounts; defining the term "hurricane savings account"; amending s. 710.102, F.S.; redefining the term "benefit plan," and defining the term "qualified minor's trust," as used in the Florida Uniform Transfers to Minors Act; amending s. 710.104, F.S.; including benefit plans in the types of property that a custodian may be named to receive on behalf of a minor; amending s. 710.108, F.S.; allowing a benefit plan to be transferred to a custodian of a minor who does not have a conservator by an obligor of the minor; amending s. 710.116, F.S.; allowing a minor's custodian, without court order, to transfer custodial property to a qualified minor's trust;

providing implications of the transfer; amending s. 733.808, F.S.; providing for the disposition of benefits under a benefit plan after the death of an owner of or participant in the plan; amending s. 744.301, F.S.; providing for the parents or natural guardians of a minor child to collect, receive, manage, and dispose of and make elections regarding the proceeds of an annuity contract payable to a minor child or of a benefit plan of which the minor is a beneficiary, participant, or owner, without appointment, authority, or bond, if the proceeds equal less than a specified maximum amount; providing a conditional effective date and an effective date.

--as amended April 13 was read the third time by title.

On motion by Senator Carlton, **CS for SB 660** as amended was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |

Dawson                          Miller

Nays--None

**CS for CS for SB 1322**--A bill to be entitled An act relating to the Public Service Commission; creating the Committee on Public Service Commission Oversight as a standing joint committee of the Legislature; providing for its membership, powers, and duties; amending s. 350.001, F.S.; requiring that the commission perform its duties independently; specifying that the Governor has no planning or budgetary authority with respect to the commission; specifying that the Governor and the Department of Management Services have no authority over the commission's employees; amending s. 350.031, F.S.; authorizing the Florida Public Service Commission Nominating Council to make expenditures to advertise a vacancy on the council or the commission; requiring that the Committee on Public Service Commission Oversight provide a nominee for recommendation to the Governor for appointment to the Public Service Commission; providing procedures; amending s. 350.041, F.S.; clarifying the prohibition against accepting gifts with respect to its application to commissioners attending conferences; requiring that a penalty be imposed against a person who gives a commissioner a prohibited gift; requiring that commissioners avoid impropriety and act in a manner that promotes confidence in the commission; amending s. 350.042, F.S.; requiring that a penalty be imposed against a person involved in a prohibited ex parte communication with a commissioner; amending s. 350.061, F.S.; requiring that the Committee on Public Service Commission Oversight rather than the Joint Legislative Auditing Committee appoint the Public Counsel; providing for biennial reconfirmation rather than annual; requiring that the Public Counsel perform his or her duties independently; amending s. 350.0614, F.S.; requiring that the Committee on Public Service Commission Oversight rather than the Joint Legislative Auditing Committee oversee expenditures of the Public Counsel; amending s. 120.80, F.S.; requiring that the commission refer certain matters affecting the substantial interest of a utility to the Division of Administrative Hearings so that an administrative judge may be assigned to conduct a hearing and enter a recommended order; providing an effective date.

--was read the third time by title.

Senators Argenziano and Constantine offered the following amendment which was moved by Senator Constantine:

**Amendment 1 (113280)(with title amendment)**--On page 12, between lines 14 and 15, insert:

*(i) A commissioner may not directly or indirectly, through staff or the means, solicit any thing of value from any public utility regulated by the commission, or from any business entity that, whether directly or indirectly, is an affiliate or subsidiary of any public utility regulated by the commission or from any party appearing in a proceeding considered by the commission in the last 2 years.*

And the title is amended as follows:

On page 1, line 30, after the first semicolon (;) insert: prohibiting a commissioner from soliciting any thing of value, either directly or indirectly, from any public utility, its affiliate, or any party;

### MOTION

On motion by Senator Constantine, the rules were waived to allow the following amendment to be considered:

Senators Argenziano and Constantine offered the following substitute amendment which was moved by Senator Constantine and adopted by two-thirds vote:

**Amendment 2 (602018)(with title amendment)**--On page 12, between lines 14 and 15, insert:

*(i) A commissioner may not directly or indirectly, through staff or other means, solicit any thing of value from any public utility regulated by the commission, or from any business entity that, whether directly or indirectly, is an affiliate or subsidiary of any public utility regulated by the commission, or from any party appearing in a proceeding considered by the commission in the last 2 years.*

And the title is amended as follows:

On page 1, line 30, after the first semicolon (;) insert: prohibiting a commissioner from soliciting any thing of value, either directly or indirectly, from any public utility, its affiliate, or any party;

On motion by Senator Constantine, **CS for CS for SB 1322** as amended was passed, ordered engrossed and then certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |

| | |
|---|---|
| Dawson | Miller |

Nays--None

**HB 155**--A bill to be entitled An act relating to the Lake Okeechobee Protection Program; amending s. 373.4595, F.S.; providing legislative findings with respect to implementation and funding of the Lake Okeechobee Watershed Phosphorus Control Program and the Lake Okeechobee Protection Program; revising a definition; providing that the Department of Agriculture and Consumer Services, the Department of Environmental Protection, and the South Florida Water Management District be jointly responsible for implementing the Lake Okeechobee Protection Plan; requiring that annual funding priorities be jointly established; providing criteria for determining funding priorities; repealing obsolete provisions; providing an effective date.

--was read the third time by title.

On motion by Senator Alexander, **HB 155** was passed and certified to the House. The vote on passage was:

Yeas--38

| | | |
|---|---|---|
| Mr. President | Carlton | Haridopolos |
| Alexander | Clary | Hill |
| Argenziano | Crist | Jones |
| Aronberg | Dawson | King |
| Atwater | Diaz de la Portilla | Klein |
| Baker | Dockery | Lawson |
| Bennett | Fasano | Lynn |
| Bullard | Garcia | Margolis |
| Campbell | Geller | Miller |

| | | |
|---|---|---|
| Peaden | Sebesta | Webster |
| Pruitt | Siplin | Wilson |
| Rich | Smith | Wise |
| Saunders | Villalobos | |

Nays--None

Vote after roll call:

Yea--Constantine, Posey

**HB 349**--A bill to be entitled An act relating to auditor selection procedures; amending s. 218.391, F.S.; revising the auditor selection procedures that local governmental entities, district school boards, charter schools, and charter technical career centers must use in selecting auditors to conduct certain required financial audits; revising provisions relating to membership, purposes, and duties of audit committees required to be established to aid in such selection; providing for requests for proposals; providing review and ranking requirements; requiring written contracts and providing requirements therefor, including renewal requirements; providing an effective date.

--was read the third time by title.

On motion by Senator Atwater, **HB 349** was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |

| | | |
|---|---|---|
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**CS for SB 1194**--A bill to be entitled An act relating to homestead assessments; providing an exception to requirements to assess certain homestead property at just value under certain circumstances; providing limitations; providing an effective date.

--was read the third time by title.

On motion by Senator Bennett, **CS for SB 1194** was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |

| | | |
|---|---|---|
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**CS for SB 938**--A bill to be entitled An act relating to adverse medical incidents; creating s. 381.028, F.S.; providing a short title; providing a purpose; defining terms; specifying patients' right of access to records relating to an adverse medical incident; prohibiting the disclosure of the identity of certain patients; providing for maintaining privacy restrictions imposed by federal law; providing for the applicability of s. 25, Art. X of the State Constitution; providing for applicability of this section; providing restrictions upon the use of the records; providing for the identification and production of the records; providing for fees charged for copies of records; providing an effective date.

--was read the third time by title.

On motion by Senator Peaden, **CS for SB 938** was passed and certified to the House. The vote on passage was:

Yeas--38

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Carlton | King | Villalobos |
| Clary | Klein | Webster |
| Constantine | Lawson | Wilson |
| Crist | Lynn | Wise |
| Dawson | Margolis | |

Nays--2

| | |
|---|---|
| Campbell | Miller |

**CS for SB 1144**--A bill to be entitled An act relating to public records and public meetings; amending s. 119.01, F.S.; clarifying general state policy on public records; amending s. 119.07, F.S.; conforming crossreferences; making editorial and conforming changes; transferring exemptions from public-records requirements under that section to indicated sections of Florida Statutes; amending s. 119.071, F.S.; transferring exemptions from public-records requirements under s. 119.07(6), F.S., to that section and reorganizing the exemptions under the classifications of "Agency Administration," "AgencyInvestigations," "Security," "Agency Personnel Information," and "Other Personal Information"; making editorial and conforming changes; transferring and amending s. 119.0721, F.S.; transferring exemptions provided for social security numbers to s. 119.071, F.S.; making editorial and conforming changes; deleting obsolete provisions; creating s. 119.0711, F.S.; transferring exemptions under s. 119.07(6), F.S., to that section and reorganizing the exemptions under the classification of "Executive Branch Agency Exemptions from Inspection and Copying of Public Records"; making editorial and conforming changes; creating s. 119.0712, F.S.; transferring exemptions under s. 119.07(6), F.S., to that section and reorganizing the exemptions under the classification of "Executive Branch Agency-Specific Exemptions from Inspection and Copying of Public Records"; making editorial and conforming changes; creating s. 119.0713, F.S.; transferring exemptions under s. 119.07(6), F.S., to that section and reorganizing the exemptions under the classification of "Local Government Branch Agency Exemptions from Inspection and Copying of Public Records"; making editorial and conforming changes; amending s. 119.15, F.S.; revising standards and guidelines for the review and repeal of exemptions from public-records and public-meetings requirements pursuant to the Open Government Sunset Review Act; making editorial and conforming changes; creating s. 112.31891, F.S.; transferring exemptions under s. 119.07(6), F.S., to that section and reorganizing the exemptions under the classification of "Investigatory Records"; making editorial and conforming changes; creating s. 27.7081, F.S.; transferring provisions relating to capital postconviction public records production under s. 119.19, F.S., to that section; amending ss. 27.708, 101.5607, 112.533, 119.011, 286.0113, 287.0943, 320.05, 322.20, 338.223, 401.27, 409.2577, 633.527, 794.024, and 1007.35, F.S.; conforming crossreferences; providing an effective date.

--was read the third time by title.

On motion by Senator Argenziano, **CS for SB 1144** was passed and certified to the House. The vote on passage was:

 Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |

| | | |
|---|---|---|
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**CS for SB 646**--A bill to be entitled An act relating to youthful offenders; amending ss. 958.045 and 958.11, F.S.; revising sentencing provisions for juvenile offenders who violate the terms of their probation; revising references to obsolete offices within the Department of Corrections relating to youthful offenders; providing an effective date.

--was read the third time by title.

On motion by Senator Campbell, **CS for SB 646** was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

| | | |
|---|---|---|
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**SB 1172**--A bill to be entitled An act relating to the Florida Birth-Related Neurological Injury Compensation Plan; amending s. 766.309, F.S.; authorizing an administrative law judge to determine if the notice requirements have been satisfied when a claim is made under the Florida Birth-Related Neurological Injury Compensation Plan; providing legislative intent with respect to a provision clarifying the jurisdiction of an administrative law judge; amending s. 766.315, F.S.; authorizing the State Board of Administration to invest funds held on behalf of the Florida Birth-Related Neurological Injury Compensation Plan; providing an effective date.

--was read the third time by title.

On motion by Senator Jones, **SB 1172** was passed and certified to the House. The vote on passage was:

 Yeas--38

| | | |
|---|---|---|
| Mr. President | Aronberg | Bullard |


| | | |
|---|---|---|
| Alexander | Baker | Campbell |
| Argenziano | Bennett | Carlton |
| Clary | Jones | Rich |
| Constantine | King | Saunders |
| Dawson | Klein | Sebesta |
| Diaz de la Portilla | Lawson | Siplin |
| Dockery | Lynn | Smith |
| Fasano | Margolis | Villalobos |
| Garcia | Miller | Webster |
| Geller | Peaden | Wilson |
| Haridopolos | Posey | Wise |
| Hill | Pruitt | |

Nays--None

Vote after roll call:

Yea--Atwater, Crist

**CS for SB 940**--A bill to be entitled An act relating to repeated medical malpractice; amending s. 456.041, F.S.; requiring the

Department of Health to verify information submitted by a person who applies for initial licensure, or renewal of licensure, as a physician; creating s. 456.50, F.S.; defining terms; prescribing acts that constitute repeated medical malpractice; providing for review of acts and determination by the Board of Medicine and the Board of Osteopathic Medicine; authorizing the Board of Medicine and the Board of Osteopathic Medicine to require licensees and applicants for licensure to provide a copy of the record of the trial of any medical malpractice judgment involving an incident occurring on or after a specified date; extending the 90-day requirement for granting or denying a complete allopathic or osteopathic licensure application to 180 days; amending s. 458.331, F.S.; redefining acts of medical malpractice, gross medical malpractice, or repeated medical malpractice which constitute grounds for disciplinary action against a physician; amending s. 459.015, F.S.; redefining acts of medical malpractice, gross medical malpractice, or repeated medical malpractice which constitute grounds for disciplinary action against an osteopathic physician; providing an effective date.

--was read the third time by title.

On motion by Senator Peaden, **CS for SB 940** was passed and certified to the House. The vote on passage was:

Yeas--35

| | | |
|---|---|---|
| Mr. President | Dawson | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Jones | Siplin |
| Bullard | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |

Nays--3

| | | |
|---|---|---|
| Campbell | Hill | Miller |

Vote after roll call:

Yea--Diaz de la Portilla, Smith

**CS for SB 612**--A bill to be entitled An act relating to Veterans' Day; requiring school districts to observe Veterans' Day; prohibiting holding classes on that day; providing an exception; requiring the date of the Veterans' Day observance to correspond with the federal holiday; providing an effective date.

--as amended April 13 was read the third time by title.

On motion by Senator Hill, **CS for SB 612** as amended was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |

| | | |
|---|---|---|
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**CS for SB 1662**--A bill to be entitled An act relating to insurance; amending s. 626.901, F.S.; revising an exception from the prohibition against representing or aiding unauthorized insurers; providing for immediate cease-and-desist orders for violations of the prohibition; providing legislative findings; authorizing investigations of activities that may constitute violations of the prohibition; amending s. 626.902, F.S.; providing an exception from penalty provisions for a person who cooperates with the office to administer the Unauthorized Insurers Process Law; amending s. 626.908, F.S.; providing conditions on defenses of certain actions against unauthorized insurers and persons representing or aiding them; prescribing a time limit on motions to quash or set aside service of process in actions against such unauthorized insurers and other persons; providing an effective date.

--as amended April 13 was read the third time by title.

On motion by Senator Fasano, **CS for SB 1662** as amended was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |

| | | |
|---|---|---|
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

Consideration of **CS for SB 1508** and **HB 77** was deferred.

**HB 281**--A bill to be entitled An act relating to paperwork reduction in the school districts; requiring the establishment of the Paper Reduction Task Force and providing membership; requiring recommendations to minimize the paperwork burden placed on school districts and school district personnel; requiring a report to the Legislature; providing for abolishment of the task force; providing an effective date.

--was read the third time by title.

On motion by Senator Haridopolos, **HB 281** was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**SB 1980**--A bill to be entitled An act relating to the Florida Commission on Tourism; amending s. 288.1223, F.S.; designating a member from the restaurant industry to the Florida Commission on Tourism; revising financial-disclosure requirements for commission members to conform with those of other statewide boards and commissions exercising

governing authority; repealing s. 288.1224(11), F.S., relating to a statewide advisory committee of the Florida Commission on Tourism; providing an effective date.

--was read the third time by title.

On motion by Senator Sebesta, **SB 1980** was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**SB 1796**--A bill to be entitled An act relating to property tax administration; amending s. 195.0995, F.S.; providing that if the Department of Revenue finds that more than 10 percent of sales qualified or disqualified by a county do not fall within applicable criteria, the department shall issue a postaudit notification of defects instead of a review notice; amending s. 195.096, F.S.; revising the requirements placed on the department in its review of assessment rolls; providing an effective date.

--was read the third time by title.

On motion by Senator Atwater, **SB 1796** was passed and certified to the House. The vote on passage was:

Yeas--39

| | | |
|---|---|---|
| Mr. President | Bullard | Diaz de la Portilla |
| Alexander | Campbell | Dockery |
| Argenziano | Carlton | Fasano |
| Aronberg | Clary | Garcia |
| Atwater | Constantine | Geller |
| Baker | Crist | Haridopolos |
| Bennett | Dawson | Hill |
| Jones | Miller | Sebesta |
| King | Peaden | Siplin |
| Klein | Posey | Smith |
| Lawson | Pruitt | Villalobos |
| Lynn | Rich | Webster |

| | | |
|---|---|---|
| Margolis | Saunders | Wise |

Nays--None

Vote after roll call:

Yea--Wilson

**SB 1460**--A bill to be entitled An act relating to motor vehicle registration; amending s. 320.02, F.S.; requiring that the registration application form contain a provision permitting a voluntary contribution to be distributed to Southeastern Guide Dogs, Inc.; providing for use of the funds; exempting such funds from the general revenue service charge; providing an effective date.

--was read the third time by title.

On motion by Senator Bennett, **SB 1460** was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |

| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**HJR 1177**--A joint resolution proposing an amendment to Section 4 of Article VI and the creation of Section 26 of Article XII of the State Constitution relating to limitations on the number of consecutive years during which certain elected constitutional officers may hold office before being denied the right to have their names appear on the ballot.

*Be It Resolved by the Legislature of the State of Florida: That the amendment to Section 4 of Article VI and the creation of Section 26 of Article XII of the State Constitution set forth below are agreed to and shall be submitted to the electors of Florida for approval or rejection at the general election to be held in November 2006:*

ARTICLE VI

SUFFRAGE AND ELECTIONS

Section 1. Disqualifications.--

(a) No person convicted of a felony, or adjudicated in this or any other state to be mentally incompetent, shall be qualified to vote or hold office until restoration of civil rights or removal of disability.

(b) No person may appear on the ballot for re-election to any of the following offices:

(1) Florida representative, *or*

(2) Florida senator,

(3) Florida Lieutenant governor,

(4) any office of the Florida cabinet,

(5) U.S. Representative from Florida, or

~~(6) U.S. Senator from Florida~~

if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for *twelve* ~~eight~~ consecutive years.

*(c) No person may appear on the ballot for re-election to any office of the Florida cabinet or the office of Florida lieutenant governor if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.*

ARTICLE XII

SCHEDULE

Section 2. *SECTION 26.--The amendment to Section 4 of Article VI denying ballot access for re-election to any state legislator who will have served (or, but for resignation, would have served) in that office for 12 consecutive years, rather than 8 consecutive years, shall take effect upon approval by the voters and shall apply only to those officers whose consecutive years in office begin in November 2006 or thereafter.*

BE IT FURTHER RESOLVED that the title and substance of the amendment proposed herein shall appear on the ballot as follows:

TERM LIMITS

Proposes an amendment to Section 4 of Article VI and the creation of Section 26 of Article XII of the State Constitution to increase, from 8 to 12, the number of consecutive years a state legislator may serve in that office before being denied the right to have his or her name appear on the ballot for re-election to that office; applies to those officers whose consecutive years in office begin in November 2006 or thereafter; removes provisions that apply term limits by means of ballot access to members of Congress, which the United States Supreme Court has determined violate the Federal Constitution.

--was read the third time in full.

On motion by Senator Sebesta, **HJR 1177** was passed by the required constitutional three-fifths vote of the membership and certified to the House. The vote on passage was:

Yeas--35

| | | |
|---|---|---|
| Mr. President | Dawson | Posey |
| Alexander | Diaz de la Portilla | Pruitt |
| Argenziano | Geller | Rich |
| Aronberg | Haridopolos | Saunders |
| Atwater | Hill | Sebesta |
| Baker | Jones | Siplin |

| | | |
|---|---|---|
| Bennett | King | Smith |
| Bullard | Klein | Villalobos |
| Campbell | Lawson | Webster |
| Carlton | Margolis | Wilson |
| Clary | Miller | Wise |
| Constantine | Peaden | |

Nays--4

| | | |
|---|---|---|
| Crist | Fasano | Lynn |
| Dockery | | |

Vote after roll call:

Yea--Garcia

**CS for CS for SB 492**--A bill to be entitled An act relating to recovering, towing, and storage of motor vehicles, vessels, and mobile homes; amending s. 319.30, F.S.; redefining the term "certificate of destruction," to conform; amending s. 323.001, F.S.; revising certain towing and storage rates; amending s. 713.78, F.S.; removing mobile homes from the application of a statutory lien for towing and storage; conforming provisions related to recovering, towing, or storing vessels; providing for attorney's fees; creating s. 713.785, F.S.; authorizing the imposition of lien by a mobile home transport company for recovering, towing, or storing a mobile home; providing definitions; requiring a mobile home transport company to provide notice of recovery, towing, or storage services; providing for the filing of a complaint; providing procedures for the sale of an unclaimed mobile home; specifying circumstances under which a mobile home transport company must obtain a certificate of destruction; providing for fees; authorizing the department to adopt rules; providing for fees; providing for issuing certificates of destruction and revalidation stickers; providing procedures for disputing a lien and for discharge of a lien; providing for the posting and repayment of surety; providing for criminal penalties; amending s. 715.07, F.S.; defining the term "vessel";

conforming provisions related to towing vessels parked on private property; imposing criminal penalties for failure to comply with certain laws governing the towing of vehicles and vessels; providing effective dates.

--as amended April 13 was read the third time by title.

On motion by Senator Bennett, **CS for CS for SB 492** as amended was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**CS for CS for SB 370**--A bill to be entitled An act relating to procedures for the satisfaction of debts; amending s. 55.141, F.S.; revising provisions relating to satisfaction of judgments and decrees; eliminating the authority of judges to act under these provisions when there is no clerk of court; revising requirements of the clerk when accepting payment for satisfaction of a judgment and executing and recording a satisfaction of judgment; providing a sample form to be used by a clerk when recording a satisfaction of judgment; revising provisions relating to notification of satisfaction of judgment to a judgment holder; amending s. 55.202, F.S.; revising procedures for acquiring a judgment lien; authorizing the court to file a judgment lien certificate before a judgment becomes final under certain circumstances; providing that an improperly filed certificate is of no effect; amending s. 55.204, F.S.; revising provisions relating to the continuation of judgment liens; revising provisions requiring the Department of State to maintain certain files and information; amending s. 55.205, F.S.; deleting a provision authorizing certain creditors to bring certain actions against the property of a debtor; amending ss. 55.602, 55.603, 55.604, 55.605, and 55.606, F.S.; revising provisions relating to foreign judgments to apply only to out-of-country foreign judgments; amending s. 56.21, F.S.; revising requirements for notices of a levy and execution sale; amending s. 56.27, F.S.; clarifying provisions relating to payment of money received under execution; amending s. 56.29, F.S.; revising requirements regarding supplementary proceedings for unsatisfied judgments; amending s. 77.03, F.S.; deleting the provision that a garnishing creditor must believe that execution would be unavailing; amending s. 77.04, F.S.; specifying a time period for a garnishee to serve an answer to a writ; amending s. 77.041, F.S.; increasing the time period during which a garnishing creditor may object to the debtor's claim of exemption and request a hearing; amending s. 77.07, F.S.; providing for automatic dissolution of a writ and discharge of a garnishee of liability under certain circumstances; granting a plaintiff the right to extend a writ for a certain time period; providing procedures; amending s. 222.01, F.S.; revising provisions relating to the designation of homestead property by the owner prior to levy to include foreign judgments; amending s. 319.27, F.S.; correcting a crossreference; amending s. 679.1021, F.S.; redefining the term "lien creditor"; amending s. 701.02, F.S.; providing that chapters 670-680 of the Uniform Commercial Code govern the attachment and perfection of a security interest in a mortgage upon real property and in a promissory note or other right to payment or performance secured by that mortgage; providing that the assignment of such a mortgage need not be recorded under s. 701.02, F.S., in order for a security interest in the mortgage to attach or be perfected under the Uniform Commercial Code; providing that a creditor or subsequent purchaser of real property or of any interest therein may rely on a full or partial release, discharge, consent, joinder, subordination, satisfaction, or assignment of a mortgage upon the property which was made by the mortgagee of record, without regard to the filing of certain Uniform Commercial Code financing statements; providing that the filing of such a financing statement does not constitute notice for the purposes of s. 701.02, F.S.; defining the term "mortgagee of record"; providing effective dates.

--was read the third time by title.

On motion by Senator Campbell, **CS for CS for SB 370** was passed and certified to the House. The vote on passage was:

Yeas--39

| | | |
|---|---|---|
| Mr. President | Dawson | Margolis |
| Alexander | Diaz de la Portilla | Miller |
| Argenziano | Dockery | Peaden |

| | | |
|---|---|---|
| Aronberg | Fasano | Posey |
| Atwater | Garcia | Pruitt |
| Baker | Geller | Rich |
| Bennett | Haridopolos | Saunders |
| Bullard | Hill | Sebesta |
| Campbell | Jones | Smith |
| Carlton | King | Villalobos |
| Clary | Klein | Webster |
| Constantine | Lawson | Wilson |
| Crist | Lynn | Wise |

Nays--None

Vote after roll call:

Yea--Siplin

**HB 213**--A bill to be entitled An act relating to construction professionals; amending s. 481.221, F.S.; requiring the Board of Architecture and Interior Design to prescribe, by rule, one or more forms of seals for use by a registered architect or interior designer who holds a valid certificate of registration; authorizing use of one seal and registration of the seal electronically; authorizing electronic transmission and sealing of final plans, specifications, or reports; prohibiting signing or sealing of final plans, specifications, or reports after expiration, suspension, or revocation of certificate of registration; requiring surrender of the seal upon suspension or revocation of the certificate of registration; amending s. 481.321, F.S.; requiring the Board of Landscape Architecture to prescribe, by rule, one or more forms of seals for use by a registered landscape architect who holds

a valid certificate of registration; authorizing use of one seal and registration of the seal electronically; authorizing electronic transmission and sealing of final plans, specifications, or reports; prohibiting signing or sealing of final plans, specifications, or reports after expiration, suspension, or revocation of certificate of registration; requiring surrender of the seal upon suspension or revocation of the certificate of registration; reenacting s. 481.225(1)(a) and (3), F.S., relating to disciplinary proceedings against registered architects, to incorporate the amendment to s. 481.221, F.S., in a reference thereto; providing penalties; reenacting s. 481.325(1)(a) and (3), F.S., relating to disciplinary proceedings against registered landscape architects, to incorporate the amendment to s. 481.321, F.S., in a reference thereto; providing penalties; amending s. 489.103, F.S.; exempting preengineered fire extinguishing system permittees from construction contracting regulation; amending s. 489.105, F.S.; revising contractor definitions to authorize Class A and Class B air-conditioning contractors to disconnect or reconnect changeouts of liquefied petroleum or natural gas appliances within buildings, mechanical contractors to install, maintain, fabricate, repair, alter, extend, or design, when not prohibited by law, liquefied petroleum gas lines within buildings, and plumbing contractors to install liquefied petroleum gas and related venting lines; providing an effective date.

--was read the third time by title.

On motion by Senator Haridopolos, **HB 213** was passed and certified to the House. The vote on passage was:

Yeas--40

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Peaden |
| Alexander | Dockery | Posey |
| Argenziano | Fasano | Pruitt |
| Aronberg | Garcia | Rich |
| Atwater | Geller | Saunders |
| Baker | Haridopolos | Sebesta |
| Bennett | Hill | Siplin |
| Bullard | Jones | Smith |
| Campbell | King | Villalobos |
| Carlton | Klein | Webster |
| Clary | Lawson | Wilson |

| | | |
|---|---|---|
| Constantine | Lynn | Wise |
| Crist | Margolis | |
| Dawson | Miller | |

Nays--None

**HB 1765**--A bill to be entitled An act relating to the Federal Grants Trust Fund; creating s. 947.045, F.S.; creating the Federal Grants Trust Fund within the Florida Parole Commission; providing for the source and use of funds; providing for annual carryover of funds; providing for review and termination or re-creation of the trust fund; providing an effective date.

--was read the third time by title.

On motion by Senator Crist, **HB 1765** was passed by the required constitutional three-fifths vote of the membership and certified to the House. The vote on passage was:

Yeas--39

| | | |
|---|---|---|
| Mr. President | Diaz de la Portilla | Miller |
| Alexander | Dockery | Peaden |
| Argenziano | Fasano | Posey |
| Aronberg | Garcia | Pruitt |
| Atwater | Geller | Rich |
| Baker | Haridopolos | Saunders |
| Bennett | Hill | Sebesta |
| Bullard | Jones | Siplin |
| Campbell | King | Smith |

| | | |
|---|---|---|
| Clary | Klein | Villalobos |
| Constantine | Lawson | Webster |
| Crist | Lynn | Wilson |
| Dawson | Margolis | Wise |

Nays--None

Vote after roll call:

Yea--Carlton

## SPECIAL ORDER CALENDAR

The Senate resumed consideration of--

**HB 149**--A bill to be entitled An act relating to extracurricular student activities; amending s. 1006.15, F.S.; providing that eligibility requirements for participation shall apply to all extracurricular activities rather than to interscholastic activities only; providing that a student shall not be precluded from participation in certain activities; providing certain restrictions with respect to participation; authorizing establishment of a waiver process; prohibiting certain waivers; amending ss. 1002.33 and 1002.41, F.S.; conforming provisions; requiring the Department of Education to annually report data relating to student participation in extracurricular activities; providing an effective date.

--which was previously considered April 13. Pending **Amendment 1 (805952)** by Senator Baker was withdrawn.

Senator Baker moved the following amendment:

**Amendment 2 (762378)(with title amendment)**--Delete everything after the enacting clause and insert:

Section 1. Section 1006.15, Florida Statutes, is amended to read:

1006.15 Student standards for participation in ~~interscholastic~~ extracurricular student activities; regulation.--

(1) This section may be cited as the "Craig Dickinson Act."

(2) ~~Interscholastic~~ Extracurricular student activities are an important complement to the academic curriculum. Participation in

a comprehensive extracurricular and academic program contributes to student development of the social and intellectual skills necessary to become a well-rounded adult. As used in this section, the term "extracurricular" means any school-authorized or education-related activity, *including, but not limited to, interscholastic activities,* occurring during or outside the regular instructional school day. *For purposes of this section, a student shall not be precluded from receiving tutoring, performing community service, or attending school athletic, social, and academic functions. However, a student who is not eligible, pursuant to this section, to participate in extracurricular activities shall not perform at school functions or travel with a school team, band, club, or other organization to any event where the group is to compete or perform. This section does not prohibit a student who is enrolled in a class designated by the student course code directory provided by the Department of Education from performing or traveling to compete or perform as part of the class curriculum.*

(3)(a) To be eligible to participate in ~~interscholastic~~ extracurricular student activities, a student must:

1. Maintain a grade point average of 2.0 or above on a 4.0 scale, or its equivalent, in the previous semester or a cumulative grade point average of 2.0 or above on a 4.0 scale, or its equivalent, in the courses required by s. 1003.43(1).

2. Execute and fulfill the requirements of an academic performance contract between the student, the district school board, the appropriate governing association, and the student's parents, if the student's cumulative grade point average falls below 2.0, or its equivalent, on a 4.0 scale in the courses required by s. 1003.43(1) or, for students who entered the 9th grade prior to the 1997-1998 school year, if the student's cumulative grade point average falls below 2.0 on a 4.0 scale, or its equivalent, in the courses required by s. 1003.43(1) that are taken after July 1, 1997. At a minimum, the contract must require that the student attend summer school, or its graded equivalent, between grades 9 and 10 or grades 10 and 11, as necessary.

3. Have a cumulative grade point average of 2.0 or above on a 4.0 scale, or its equivalent, in the courses required by s. 1003.43(1) during his or her junior or senior year.

4. Maintain satisfactory conduct and, if a student is convicted of, or is found to have committed, a felony or a delinquent act which would have been a felony if committed by an adult, regardless of whether adjudication is withheld, the student's participation in ~~interscholastic~~ extracurricular activities is contingent upon established and published district school board policy.

*District school boards are encouraged to establish a process to waive the requirements of this paragraph based on extenuating circumstances of an individual student. The State Board of Education shall approve each school district's waiver process prior to implementation.*

(b) Any student who is exempt from attending a full school day based on rules adopted by the district school board for double session schools or programs, experimental schools, or schools operating under emergency conditions must maintain the grade point average required by this section and pass each class for which he or she is enrolled. *The establishment and approval of the waiver process pursuant to paragraph (a) shall apply to the requirements of this paragraph.*

(c) An individual home education student is eligible to participate at the public school to which the student would be assigned according to district school board attendance area policies or which the student could choose to attend pursuant to district or interdistrict controlled open enrollment provisions, or may develop an agreement to participate at a private school, in the ~~interscholastic~~ extracurricular activities of that school, provided the following conditions are met:

1. The home education student must meet the requirements of the home education program pursuant to s. 1002.41.

2. During the period of participation at a school, the home education student must demonstrate educational progress as required in paragraph (b) in all subjects taken in the home education program by a method of evaluation agreed upon by the parent and the school principal which may include: review of the student's work by a certified teacher chosen by the parent; grades earned through correspondence; grades earned in courses taken at a community college, university, or trade school; standardized test scores above the 35th percentile; or any other method designated in s. 1002.41.

3. The home education student must meet the same residency requirements as other students in the school at which he or she participates.

4. The home education student must meet the same standards of acceptance, behavior, and performance as required of other

students in extracurricular activities.

5. The student must register with the school his or her intent to participate in ~~interscholastic~~ extracurricular activities as a representative of the school before the beginning date of the season for the activity in which he or she wishes to participate. A home education student must be able to participate in curricular activities if that is a requirement for an extracurricular activity.

6. A student who transfers from a home education program to a public school before or during the first grading period of the school year is academically eligible to participate in ~~interscholastic~~ extracurricular activities during the first grading period provided the student has a successful evaluation from the previous school year, pursuant to subparagraph 2.

7. Any public school or private school student who has been unable to maintain academic eligibility for participation in ~~interscholastic~~ extracurricular activities is ineligible to participate in such activities as a home education student until the student has successfully completed one grading period in home education pursuant to subparagraph 2. to become eligible to participate as a home education student.

(d) An individual charter school student pursuant to s. 1002.33 is eligible to participate at the public school to which the student would be assigned according to district school board attendance area policies or which the student could choose to attend, pursuant to district or interdistrict controlled open-enrollment provisions, in any ~~interscholastic~~ extracurricular activity of that school, unless such activity is provided by the student's charter school, if the following conditions are met:

1. The charter school student must meet the requirements of the charter school education program as determined by the charter school governing board.

2. During the period of participation at a school, the charter school student must demonstrate educational progress as required in paragraph (b).

3. The charter school student must meet the same residency requirements as other students in the school at which he or she participates.

4. The charter school student must meet the same standards of acceptance, behavior, and performance that are required of other students in extracurricular activities.

5. The charter school student must register with the school his or her intent to participate in ~~interscholastic~~extracurricular activities as a representative of the school before the beginning date of the season for the activity in which he or she wishes to participate. A charter school student must be able to participate in curricular activities if that is a requirement for an extracurricular activity.

6. A student who transfers from a charter school program to a traditional public school before or during the first grading period of the school year is academically eligible to participate in ~~interscholastic~~ extracurricular activities during the first grading period if the student has a successful evaluation from the previous school year, pursuant to subparagraph 2.

7. Any public school or private school student who has been unable to maintain academic eligibility for participation in ~~interscholastic~~ extracurricular activities is ineligible to participate in such activities as a charter school student until the student has successfully completed one grading period in a charter school pursuant to subparagraph 2. to become eligible to participate as a charter school student.

(4) The student standards for participation in ~~interscholastic~~ extracurricular activities must be applied beginning with the student's first semester of the 9th grade. Each student must meet such other requirements for participation as may be established by the district school board; however, a district school board may not establish requirements for participation in ~~interscholastic~~ extracurricular activities which make participation in such activities less accessible to home education students than to other students. Except as set forth in paragraph (3)(c), evaluation processes or requirements that are placed on home education student participants may not go beyond those that apply under s. 1002.41 to home education students generally.

(5) Any organization or entity that regulates or governs ~~interscholastic~~ extracurricular activities of public schools:

(a) Shall permit home education associations to join as member schools.

(b) Shall not discriminate against any eligible student based on an educational choice of public, private, or home education.

(6) Public schools are prohibited from membership in any organization or entity which regulates or governs ~~interscholastic~~ extracurricular activities and discriminates against eligible students in public, private, or home education.

(7) Any insurance provided by district school boards for participants in extracurricular activities shall cover the participating home education student. If there is an additional premium for such coverage, the participating home education student shall pay the premium.

Section 2. Subsection (11) of section 1002.33, Florida Statutes, is amended to read:

1002.33 Charter schools.--

(11) PARTICIPATION IN ~~INTERSCHOLASTIC~~ EXTRACURRICULAR ACTIVITIES.--A charter school student is eligible to participate in an ~~interscholastic~~ extracurricular activity at the public school to which the student would be otherwise assigned to attend pursuant to s. 1006.15(3)(d).

Section 3. Subsection (4) of section 1002.41, Florida Statutes, is amended to read:

1002.41 Home education programs.--

(4) Home education students may participate in ~~interscholastic~~ extracurricular student activities in accordance with the provisions of s. 1006.15.

Section 4. *The Department of Education shall gather data regarding the number of students who have been precluded from participating in extracurricular activities due to the provisions of* section 1006.15, Florida Statutes, *as amended by this act, and the effect of those provisions on graduation rates and dropout rates. This data shall be reported annually to the Governor, the President of the Senate, and the Speaker of the House of Representatives.*

Section 5. This act shall take effect January 1, 2006.

And the title is amended as follows:

Delete everything before the enacting clause and insert: extracurricular student activities; amending s. 1006.15, F.S.; providing that eligibility requirements for participation shall apply to all extracurricular activities rather than to interscholastic activities only; providing that a student shall not be precluded from participation in certain activities; providing certain restrictions with respect to participation; authorizing district school boards to establish a waiver process; requiring the State Board of Education to approve school district waiver processes; amending ss. 1002.33 and 1002.41, F.S.; conforming provisions; requiring the Department of Education to annually report data relating to student participation in extracurricular activities; providing an effective date.

## MOTION

On motion by Senator Wilson, the rules were waived to allow the following amendment to be considered:

Senator Wilson moved the following amendment to **Amendment 2** which failed:

**Amendment 2A (254598)**--On page 2, line 13, after the period (.) insert: *However, a student who is eligible may continue to participate in extra-curricular activities other than athletics for a 9-week grading period. Following the 9-week period, if that student does not meet the requirements of this section, the student may not participate in the extracurricular activities as provided in this section.*

The question recurred on Amendment 2.

On motion by Senator Baker, further consideration of **HB 149** with pending **Amendment 2 (762378)** was deferred.

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

**MOTION**

By direction of the President, a motion by Senator Pruitt to retain HB 149 on the Special Order Calendar was adopted.

### MOTIONS RELATING TO COMMITTEE REFERENCE

On motion by Senator Pruitt, by two-thirds vote **SB 896**, **CS for SB 1028**, **SB 2220**, **SB 1024** and **CS for SB 440** were withdrawn from the Committee on Rules and Calendar; **SB 1660** was also referred to the Committee on Ways and Means; **CS for CS for SB 1026** and **CS for SB 1964** were withdrawn from the Committee on Ways and Means; **SB 2216** was withdrawn from the Committee on Government Efficiency Appropriations; **SB 2344** was withdrawn from the Committees on Criminal Justice; and Rules and Calendar; **CS for SB 214** was also referred to the Committee on Criminal Justice; **CS for SB 514** was withdrawn from the Committee on Community Affairs; and **SB 1360** was withdrawn from the Committee on Health and Human Services Appropriations.

### REPORTS OF COMMITTEES

The Committee on Communications and Public Utilities recommends the following pass: HB 49 with 1 amendment

**The bill was referred to the Committee on Community Affairs under the original reference.**

The Committee on Commerce and Consumer Services recommends the following pass: SB 1970

**The bill was referred to the Committee on Education under the original reference.**

The Committee on Education recommends the following pass: HB 1001 with 1 amendment, SB 2088 with 1 amendment

**The bills were referred to the Committee on Education Appropriations under the original reference.**

The Committee on Commerce and Consumer Services recommends the following pass: SB 2012 with 4 amendments, SB 2222 with 2 amendments

**The bills were referred to the Committee on Government Efficiency Appropriations under the original reference.**

The Committee on Commerce and Consumer Services recommends the following pass: CS for SB 526 with 1 amendment

**The bill was referred to the Committee on Governmental Oversight and Productivity under the original reference.**

The Committee on Banking and Insurance recommends the following pass: SB 2572

**The bill was referred to the Committee on Health Care under the original reference.**

The Committee on Banking and Insurance recommends the following pass: SB 1688, SB 2118

The Committee on Commerce and Consumer Services recommends the following pass: SB 2564, SB 2566, SB 2568

The Committee on Education recommends the following pass: SB 2614 with 3 amendments

**The bills contained in the foregoing reports were referred to the Committee on Judiciary under the original reference.**

The Committee on Banking and Insurance recommends the following pass: SB 2044

**The bill was referred to the Committee on Transportation under the original reference.**

The Committee on Banking and Insurance recommends the following pass: SB 2296

**The bill was placed on the calendar.**

The Committee on Judiciary recommends a committee substitute for the following: SB 1958

**The bill with committee substitute attached was referred to the Committee on Children and Families under the original reference.**

The Committee on Judiciary recommends committee substitutes for the following: SB 214, SB 1964

**The bills with committee substitutes attached were referred to the Committee on Criminal Justice under the original reference.**

The Committee on Education recommends committee substitutes for the following: SB 1256, SJR 2090

**The bills with committee substitutes attached were referred to the Committee on Education Appropriations under the original reference.**

The Committee on Criminal Justice recommends a committee substitute for the following: CS for CS for SB 304

**The bill with committee substitute attached was referred to the Committee on General Government Appropriations under the original reference.**

The Committee on Commerce and Consumer Services recommends a committee substitute for the following: SB 1602

**The bill with committee substitute attached was referred to the Committee on Government Efficiency Appropriations under the original reference.**

The Committee on Judiciary recommends a committee substitute for the following: SB 1810

**The bill with committee substitute attached was referred to the Committee on Governmental Oversight and Productivity under the original reference.**

The Committee on Health Care recommends committee substitutes for the following: SB 874, SB 2364

The Committee on Judiciary recommends a committee substitute for the following: CS for SB 1314

**The bills with committee substitutes attached contained in the foregoing reports were referred to the Committee on Health and Human Services Appropriations under the original reference.**

The Committee on Criminal Justice recommends committee substitutes for the following: SB 1802, SB 1996, SB 2314

**The bills with committee substitutes attached were referred to the Committee on Judiciary under the original reference.**

The Committee on Governmental Oversight and Productivity recommends a committee substitute for the following: SB 274

The Committee on Judiciary recommends committee substitutes for the following: SB 1096, SB 1428

**The bills with committee substitutes attached contained in the foregoing reports were referred to the Committee on Justice Appropriations under the original reference.**

The Committee on Community Affairs recommends a committee substitute for the following: SB 1022

**The bill with committee substitute attached was referred to the Committee on Regulated Industries under the original reference.**

The Committee on Governmental Oversight and Productivity recommends committee substitutes for the following: SB 974, SB 1082, SB 1098

**The bills with committee substitutes attached were referred to the Committee on Rules and Calendar under the original reference.**

The Committee on Governmental Oversight and Productivity recommends a committee substitute for the following: CS for SB 1650

**The bill with committee substitute attached was referred to the Committee on Transportation and Economic Development Appropriations under the original reference.**

The Committee on Criminal Justice recommends committee substitutes for the following: CS for SB 572, CS for SB 1168, SB 2278

The Committee on Governmental Oversight and Productivity recommends a committee substitute for the following: SB 1028

The Committee on Health Care recommends a committee substitute for the following: SB 1722

The Committee on Judiciary recommends committee substitutes for the following: CS for SB 1258, SB 2228

**The bills with committee substitutes attached contained in the foregoing reports were placed on the calendar.**

## COMMITTEE SUBSTITUTES

## FIRST READING

By the Committee on Judiciary; and Senator Lynn--

**CS for SB 214**--A bill to be entitled An act relating to the right to a speedy trial; creating time limits within which a person charged with a crime must be brought to trial; permitting state attorneys to file a demand for a speedy trial; providing conditions that must be met in order to do so; requiring that the trial judge schedule a calendar call upon the filing of a demand for a speedy trial in order to schedule a trial; prescribing conditions under which the trial court may postpone a trial date; providing an effective date.

By the Committee on Governmental Oversight and Productivity; and Senator Crist--

**CS for SB 274**--A bill to be entitled An act relating to the Interstate Compact for Juveniles; amending s. 985.502, F.S.; revising provisions of the former Interstate Compact on Juveniles; providing purpose of the compact; providing definitions; providing for an Interstate Commission for Juveniles; providing for the appointment of commissioners; providing for an executive committee; providing for meetings; providing powers and duties of the Interstate Commission; providing for its organization and operation; providing for bylaws, officers, and staff; providing for qualified immunity from liability for the commissioners, the executive director, and employees; requiring the Interstate Commission to adopt rules; providing for oversight, enforcement, and dispute resolution by the Interstate Commission; providing for the activities of the Interstate Commission to be financed by an annual assessment from each compacting state; requiring member states to create a State Council for Interstate Juvenile Supervision; providing for the effective date of the compact and amendments thereto; providing for a state's withdrawal from and reinstatement to the compact; providing for assistance, certain penalties, suspension, or termination following default by a state; providing for judicial enforcement; providing for dissolution of the compact; providing for severability and construction of the compact; providing for the effect of the compact with respect to other laws and for its binding effect; creating s. 985.5025, F.S.; creating the State Council for Interstate Juvenile Offender Supervision to oversee state participation in the compact; providing membership; providing for records and open meetings; prescribing procedures if the council is abolished; providing for the review and future repeal of ss. 985.502 and 985.5025, F.S.; repealing ss. 985.503, 985.504, 985.505, 985.506, and 985.507, F.S., relating to obsolete provisions governing the former compact superseded by the act; providing an effective date.

By the Committees on Criminal Justice; Governmental Oversight and Productivity; Banking and Insurance; and Senator Sebesta--

**CS for CS for CS for SB 304**--A bill to be entitled An act relating to financial entities and transactions; amending s.

494.0011, F.S.; authorizing the Financial Services Commission to require electronic submission of forms, documents, or fees; providing for accommodating a technological or financial hardship; authorizing the commission to adopt rules relating to obtaining such an accommodation; amending s. 494.0016, F.S.; authorizing the commission to prescribe requirements for destroying books, accounts, records, and documents; authorizing the commission to recognize alternative statutes of limitation for such destruction; providing for procedures; amending s. 494.0029, F.S.; specifying criteria for receipt of certain applications; specifying that certain permits are not transferable or assignable; amending s. 494.00295, F.S.; revising provisions to specify continuing education for certain professions; amending s. 494.003, F.S.; clarifying application of an exemption from application of specified mortgage broker licensure requirements to certain entities; amending s. 494.0031, F.S.; requiring licensure of mortgage brokerage businesses; specifying criteria for receipt of applications; authorizing the commission or the Office of Financial Regulation to require specified information from certain applicants; revising certain fingerprinting requirements; authorizing the commission to prescribe fees and procedures for processing fingerprints; authorizing the office to contract for fingerprinting services; specifying that certain licenses are not transferable or assignable; amending s. 494.0033, F.S.; clarifying requirements for mortgage broker licensure; authorizing the commission to waive certain examination requirements under specified circumstances; authorizing the commission to prescribe additional testing fees; revising fingerprinting requirements; authorizing the commission to prescribe fees and procedures for processing fingerprints; authorizing the office to contract for certain fingerprinting services; specifying criteria for receipt of applications; deleting provisions relating to cancellation and reinstatement of licenses; amending s. 494.0034, F.S.; clarifying the commission's authorization to prescribe license renewal forms; amending s. 494.0036, F.S.; clarifying provisions relating to issuance of licenses to mortgage brokerage business branch offices; specifying criteria for receipt of certain applications; amending s. 494.0041, F.S.; specifying an additional ground for disciplinary action; amending s. 494.006, F.S.; clarifying the application of an exemption from mortgage lender licensure requirements to certain entities; amending s. 494.0061, F.S.; requiring licensure of mortgage lenders; specifying criteria for receipt of applications; revising fingerprinting requirements; authorizing the commission to prescribe fees and procedures for processing fingerprints; authorizing the office to contract for certain fingerprinting services; deleting certain provisions relating to cancellation and reinstatement of licenses; authorizing the commission to waive specified examination requirements under certain circumstances; authorizing the commission to prescribe additional testing fees; amending s. 494.0062, F.S.; requiring licensure of correspondent mortgage lenders; specifying criteria for receipt of applications; authorizing the office to require applicants to provide certain information; revising fingerprinting requirements; authorizing the commission to prescribe fees and procedures for processing fingerprints; authorizing the office to contract for certain fingerprinting services; deleting certain provisions relating to cancellation and reinstatement of licenses; authorizing the commission to waive specified examination requirements under certain circumstances; authorizing the commission to prescribe additional testing fees; requiring notice of a change in principal representatives; providing educational requirements for principal representatives; amending s. 494.0064, F.S.; clarifying a reference to professional continuing education for certain licensees; amending s. 494.0065, F.S.; specifying criteria for receipt of applications; specifying education and testing requirements for certain principal representatives and for certain applications or transfer applications; authorizing the commission to waive specified examination requirements under certain circumstances; authorizing the commission to prescribe additional testing fees; increasing a license transfer fee; revising fingerprinting requirements; authorizing the commission to prescribe fees and procedures for processing fingerprints; authorizing the office to contract for certain fingerprinting services; requiring mortgage lenders to designate a principal representative; providing criteria and requirements; requiring notice of a change in principal representatives; amending s. 494.0066, F.S.; clarifying licensure requirements for branch offices; amending s. 494.0067, F.S.; clarifying reference to professional continuing education requirements; amending s. 494.0072, F.S.; providing an additional ground for disciplinary action; amending s. 494.00721, F.S.; correcting cross-references; amending s. 501.137, F.S.; imposing certain costs and fees on a mortgage lender that fails to pay a property owner's tax or insurance premiums from an escrow account; amending s. 516.03, F.S.; specifying criteria for receipt of certain applications; providing that specified fees are nonrefundable; authorizing the commission to require electronic submission of forms, documents, or fees; providing for accommodating a technological or financial hardship; authorizing the commission to make rules relating to obtaining such an accommodation; amending s. 516.031, F.S.; increasing a reimbursement charge for certain investigation costs; amending s. 516.05, F.S.; deleting provisions relating to fees for licenses that have been denied; amending s. 516.07, F.S.; providing an additional ground for disciplinary action; amending s. 516.12, F.S.; authorizing the commission to prescribe minimum information that must be shown in a licensee's books, accounts, records, and documents; authorizing the commission to prescribe requirements for destroying books, accounts, records, and documents; authorizing the commission to recognize alternative statutes of limitation for such destruction; providing for procedures; amending s. 517.061, F.S.; revising provisions related to exempt transactions; amending ss. 517.051 and 517.081, F.S.; revising standards for accounting principles to be used in preparing certain financial statements; amending s. 517.12, F.S.; revising provisions for taking and

submitting fingerprints of dealers, associated persons, and similarly situated persons; revising provisions relating to expiration and renewal of registration of such persons; providing an exemption from registration requirements for a Canadian dealer and an associated person who represents a Canadian dealer, under certain conditions; providing for notice filing by a Canadian dealer under certain conditions; authorizing the Office of Financial Regulation of the Financial Services Commission to issue a permit to evidence the effectiveness of a notice filing for a Canadian dealer; providing for the renewal of a notice filing by a Canadian dealer; providing for reinstatement of a notice filing; providing obligations for a Canadian dealer who has given notice of filing; providing obligations for an associated person representing a Canadian dealer who has given notice of filing; providing for the termination of a notice of filing; providing for the collection of fees; amending s. 517.131, F.S.; revising conditions under which recovery can be made from the Securities Guaranty Fund; amending s. 517.141, F.S.; prescribing circumstances under which a claimant must reimburse the fund; providing for rulemaking; amending s. 517.161, F.S.; providing an additional ground for revocation, restriction, or suspension of a registration; amending ss. 520.03, 520.32, 520.52, and 520.63, F.S.; specifying criteria for receipt of certain applications; providing that certain fees are nonrefundable; amending s. 520.994, F.S.; authorizing the commission to require electronic submission of forms, documents, or fees; providing for accommodating a technological or financial hardship; providing for rulemaking; amending s. 520.995, F.S.; providing an additional ground for disciplinary action; amending ss. 520.997 and 537.009, F.S.; authorizing the commission to prescribe certain minimum information that must be shown in a licensee's books, accounts, records, and documents; authorizing the commission to prescribe requirements for destroying books, accounts, records, and documents; authorizing the commission to recognize alternative statutes of limitation for such destruction; providing for procedures; amending ss. 560.105 and 560.118, F.S.; authorizing the commission to require electronic submission of forms, documents, or fees; providing for accommodating a technological or financial hardship; amending s. 560.114, F.S.; providing an additional ground for disciplinary action; amending s. 560.121, F.S.; authorizing the commission to prescribe certain minimum information that must be shown in a licensee's books, accounts, records, and documents; authorizing the commission to prescribe requirements for destroying books, accounts, records, and documents; authorizing the commission to recognize alternative statutes of limitation for such destruction; providing for procedures; decreasing the required time period for the office to retain certain reports, records, applications, and related information; amending s. 560.126, F.S.; requiring notice of changes in information contained in a registration application; amending s. 560.205, F.S.; revising fingerprinting requirements; authorizing the commission to prescribe fees and procedures for processing fingerprints; authorizing the office to contract for certain fingerprinting services; authorizing the commission to establish procedures for depositing fees and filing documents electronically; deleting a requirement that an applicant provide a list of certain vendors; requiring the reporting of certain changes of registration by written amendment; amending s. 560.207, F.S.; authorizing the commission to establish procedures for depositing fees and filing documents electronically; revising procedures for renewing a registration; providing that specified fees are nonrefundable; providing conditions to the reinstatement of a registration; amending s. 560.210, F.S.; revising permissible investment requirements for certain registrants; amending ss. 560.211 and 560.310, F.S.; requiring notice to the office of the location of certain amended records; amending ss. 560.305 and 560.308, F.S.; revising procedures for renewing a registration; providing that specified fees are nonrefundable; providing conditions to the reinstatement of a registration; authorizing the commission to establish procedures for depositing fees and filing documents electronically; amending s. 560.306, F.S.; revising certain fingerprinting requirements; authorizing the commission to prescribe fees and procedures for processing fingerprints; authorizing the office to contract for certain fingerprinting services; requiring the reporting of certain changes of registration by written amendment; specifying in general that accounting principles are those generally accepted in the United States; specifying commission authority by rules; amending s. 560.403, F.S.; revising requirements for giving notice of intent in connection with the renewal of registration; providing that specified fees are nonrefundable; providing conditions to the reinstatement of a notice of intent; amending s. 655.935, F.S.; authorizing the search of a safedeposit box co-leased by a decedent; providing limitations; amending s. 655.936, F.S.; providing for the delivery of a safe-deposit box to a courtappointed personal representative; amending s. 655.937, F.S.; revising provisions for access to safe-deposit boxes; amending s. 733.6065, F.S.; revising provisions related to the initial opening of a safe-deposit box leased or co-leased by a decedent; amending s. 817.801, F.S.; defining the term "creditor contribution"; amending s. 817.802, F.S.; revising the amount of money that a person who engages in debt management or credit counseling services can charge a debtor residing in this state for such services; amending s. 817.804, F.S.; requiring a person engaged in debt management or credit counseling services to obtain an annual audit that includes all accounts of such person in which funds of debtors are deposited and from which payments are made to the creditors; amending s. 817.805, F.S.; requiring a person engaged in debt management or credit counseling services to disburse to the creditors all funds from a debtor, less fees and any creditor contributions; providing appropriations; providing an effective date.

By the Committees on Criminal Justice; Commerce and Consumer Services; and Senators Garcia, Fasano and Lynn--

**CS for CS for SB 572**--A bill to be entitled An act relating to consumer protection; amending s. 501.160, F.S.; providing criminal penalties for any person who fails to possess an occupational license and offers goods and services for sale to the public during a declared state of emergency; providing that this provision shall not apply to certain organizations; providing that failure to possess such a license constitutes reasonable cause to detain such person for a reasonable amount of time and in a reasonable manner; amending s. 252.36, F.S.; providing the Governor with certain emergency management powers; providing an effective date.

By the Committee on Health Care; and Senator Peaden--

**CS for SB 874**--A bill to be entitled An act relating to the sale and distribution of prescription drugs; amending s. 499.003, F.S.; redefining the term "pedigree paper"; amending s. 499.012, F.S.; providing an exemption from wholesale distribution for the transfer of prescription drugs due to a change in the ownership of a pharmacy; amending s. 499.0121, F.S.; abrogating the expiration of recordkeeping provisions for pedigree papers which relate to chain drug entities that are part of an affiliated group; providing an effective date.

By the Committees on Governmental Oversight and Productivity; and Children and Families--

**CS for SB 974**--A bill to be entitled An act relating to a review under the Open Government Sunset Review Act; amending s. 741.3165, F.S.; expanding the exemption from public-records requirements for confidential or exempt information obtained by a domestic violence fatality review team to include information that identifies a victim of domestic violence or the children of a victim; expanding the exemption from public-meetings requirements to exempt those portions of meetings at which confidential or exempt information is discussed; providing for review and repeal; providing a statement of public necessity; removing unnecessary provisions; making clarifying changes; providing an effective date.

By the Committee on Community Affairs; and Senator Rich--

**CS for SB 1022**--A bill to be entitled An act relating to local occupational license taxes; amending s. 205.0535, F.S.; updating provisions authorizing reclassification and new rate structure revisions to local occupational license taxes by ordinance; deleting counties from such authorization provisions; providing construction relating to decreasing or repealing such taxes; providing an effective date.

By the Committees on Governmental Oversight and Productivity; and Commerce and Consumer Services--

**CS for SB 1028**--A bill to be entitled An act relating to a review under the Open Government Sunset Review Act; amending s. 411.011, F.S., which provides a public-records exemption for specified records of children enrolled in school readiness programs; removing the October 2, 2005, repeal thereof scheduled under the Open Government Sunset Review Act; making editorial changes; providing an effective date.

By the Committee on Governmental Oversight and Productivity; and Senators Miller and Atwater--

**CS for SB 1082**--A bill to be entitled An act relating to a publicrecords exemption; amending s. 1004.43, F.S.; expanding the publicrecords exemption for proprietary confidential business information owned or controlled by the not-for-profit corporation operating the H. Lee Moffitt Cancer Center and Research Institute and its subsidiaries relating to trade secrets; expanding the exemption to include information received from an agency in this or another state or nation or the Federal Government which is otherwise exempt or confidential pursuant to the laws of this or another state or nation or pursuant to federal law; providing for future review and repeal under the Open Government Sunset Review Act; providing a statement of public necessity; providing an effective date.

By the Committee on Judiciary; and Senators Smith, Klein, Atwater, Campbell and Aronberg--

**CS for SB 1096**--A bill to be entitled An act relating to the Freedom to Worship Safely Act; providing a popular name; creating s. 775.0861, F.S.; providing for the upgrading of the degree of an offense that involves the use or threat of physical force or violence against any individual if the offense is committed at a location where a religious institution is conducting or carrying on religious services or activities; providing for the severity ranking of offenses; amending s. 921.0022, F.S.; providing for application of the severity ranking chart of the Criminal Punishment Code; providing applicability; providing an effective date.

By the Committee on Governmental Oversight and Productivity; and Senators Smith and Lynn--

**CS for SB 1098**--A bill to be entitled An act relating to public-records exemptions; amending s. 39.202, F.S.; creating an exception to the exemption from public-records requirements for all records held by the Department of Children and Family Services concerning reports of child abandonment, abuse, or neglect; amending s. 39.0132, F.S.; creating an exemption from public-records requirements for information obtained by a guardian ad litem in the discharge of his or her official duty; providing an exception to the exemption; providing for review and repeal under the Open Government Sunset Review Act; providing a statement of public necessity; amending s. 119.07, F.S.; creating an exemption from public-records requirements for certain identification and location information regarding a current or former guardian ad litem or the spouse and children of the guardian ad litem; providing for review and repeal under the Open Government Sunset Review Act; providing a statement of public necessity; providing an effective date.

By the Committees on Criminal Justice; Transportation; and Senators Constantine and Alexander--

**CS for CS for SB 1168**--A bill to be entitled An act relating to the Commission for the Transportation Disadvantaged; amending s. 427.012, F.S.; revising the membership of the commission; establishing term limits; directing each member of the commission to serve without regional bias; providing qualifications for appointment to membership on the commission; requiring candidates for appointment to the commission to meet certain standards for background screening; requiring the Department of Transportation to inform the commission if a candidate fails to meet the screening standards; providing that costs of screening be borne by the department or the candidate for appointment; authorizing the commission to appoint technical advisory committees; providing an effective date.

By the Committee on Education; and Senators Wise and Baker--

**CS for SB 1256**--A bill to be entitled An act relating to student financial assistance; providing legislative intent; creating the Florida Independent Collegiate Assistance (FICA) Grant Program, for the purpose of providing grants to certain students who attend certain nonpublic institutions of higher education and are enrolled in programs leading to specified occupations; requiring the Department of Education to administer the program; providing for eligibility; defining the term "eligible nonpublic institution of higher education"; providing for rulemaking by the State Board of Education; providing an effective date.

By the Committees on Judiciary; Banking and Insurance; and Senator Atwater--

**CS for CS for SB 1258**--A bill to be entitled An act relating to certificates of release for mortgages; creating s. 701.041, F.S.; providing definitions; providing for the issuance of a certificate of release for a mortgage by a title insurer or its authorized agent for certain purposes; providing for recordation; specifying contents of a certificate of release; requiring execution, acknowledgment, and recordation of a certificate of release by certain entities; providing requirements for appointment of an agent for execution purposes; providing for effect of a certificate of release; providing for liability of title insurers under certain circumstances; providing criteria for recording multiple certificates of release; providing application; requiring the Financial Services Commission to adopt rules establishing an actuarially sound premium charge for certificates of release; repealing s. 701.05, F.S., relating to failing or refusing to satisfy a lien and punishment therefor; providing an effective date.

By the Committees on Judiciary; Children and Families; and Senators Rich, Lynn, Dawson, Smith, Wilson, Campbell and Bullard--

**CS for CS for SB 1314**--A bill to be entitled An act relating to independent living; amending s. 39.013, F.S.; authorizing a child in foster care to petition the court to retain jurisdiction of his or her case; limiting the court's continued jurisdiction to 1 year after the child's 18th birthday; identifying the issues to be considered by the court during its continued jurisdiction; providing that a judicial review hearing is not required; providing an exception; amending s. 39.701, F.S.; requiring the Department of Children and Family Services to include in its judicial review study report verification that the child has been provided with certain information about the Road-to-Independence Scholarship Program and with notice of the child's right to petition the court for continuing jurisdiction; amending s. 409.1451, F.S.; authorizing a child who is eligible for the Road-to-Independence Scholarship Program to continue to reside with a licensed foster family or a group care provider; requiring that the department enroll certain young adults who were formerly in foster care in the Florida KidCare program if they do not otherwise have health insurance or are not eligible for Medicaid; requiring that the Independent Living Services Advisory Council study the most effective way of providing health insurance for young adults in the program for independent

living who are not eligible for the Florida KidCare program; requiring the council to report its recommendations to the Legislature; providing an effective date.

By the Committee on Judiciary; and Senator Haridopolos--

CS for SB 1428--A bill to be entitled An act relating to motor vehicle speed competitions; amending s. 316.191, F.S.; defining the term "conviction"; specifying that the section applies to motor vehicles; revising penalties for violation of prohibitions against described motor vehicle speed competitions; providing for impoundment of vehicles used in violation of provisions governing motor vehicle speed competitions; providing for application of the Florida Contraband Forfeiture Act; providing an effective date.

By the Committee on Commerce and Consumer Services; and Senator Baker--

CS for SB 1602--A bill to be entitled An act relating to state tax funds; amending s. 213.756, F.S.; establishing a burden of proof for certain refund claims; establishing a measure of damages for certain refund claims; specifying an affirmative defense to certain actions by a purchaser to recover taxes or for a refund of taxes; providing application; providing construction; providing severability; providing for retroactive application; providing an effective date.

By the Committees on Governmental Oversight and Productivity; Commerce and Consumer Services; and Senators King and Lynn--

CS for CS for SB 1650--A bill to be entitled An act relating to workforce innovation; amending s. 20.50, F.S.; revising the organization, powers, and duties of the Agency for Workforce Innovation; deleting references to specific programs; amending s. 445.003, F.S.; revising certain provisions relating to funding under the federal Workforce Investment Act of 1998; deleting obsolete provisions; amending s. 445.004, F.S.; revising membership and appointment of the board of directors of Workforce Florida, Inc., and increasing terms of members; providing for use of telecommunications to facilitate meetings; revising duties of the board chair and of Workforce Florida, Inc.; providing for rules; providing additional qualifications for certain board members; authorizing activities, incentives, and awards; requiring a dispute-resolution process under certain circumstances; amending s. 445.006, F.S.; providing for an operational plan; amending s. 445.007, F.S.; revising organizational requirements for regional workforce boards; providing for the use of telecommunications to facilitate meetings of regional workforce boards; authorizing activities, incentives, and awards by regional workforce boards and their subordinate entities; deleting obsolete provisions; amending s. 445.009, F.S.; deleting provisions relating to performance evaluation; deleting obsolete provisions; requiring development of a plan for leveraging resources; amending s. 445.019, F.S.; providing an additional purpose of the teen parent and pregnancy prevention diversion program; amending s. 445.020, F.S.; requiring the Temporary Assistance for Needy Families state plan to indicate financial criteria for determination of needy families or parents, when required by federal regulations; amending s. 427.012, F.S.; providing for the director of the agency to serve on the Commission for the Transportation Disadvantaged; repealing s. 445.005, F.S., relating to First Jobs/First Wages, Better Jobs/Better Wages, and High Skills/High Wages Councils of Workforce Florida, Inc., s. 445.012, F.S., relating to Careers for Florida's Future Incentive Grant Program, s. 445.0121, F.S., relating to student eligibility requirements for initial awards, s. 445.0122, F.S., relating to student eligibility requirements for renewal awards, s. 445.0123, F.S., relating to eligible postsecondary education institutions, s. 445.0124, F.S., relating to eligible programs, s. 445.0125, F.S., relating to repayment schedule, s. 445.013, F.S., relating to challenge grants in support of welfare-towork initiatives, s. 446.21, F.S., providing a short title, s. 446.22, F.S., relating to definitions for the Florida Youth-at-Risk 2000 Pilot Program, s. 446.23, F.S., relating to obligations of a mentor, s. 446.24, F.S., relating to obligations of a youth participant, s. 446.25, F.S., relating to implementation of the program, s. 446.26, F.S., relating to funding the program, and s. 446.27, F.S., relating to an annual report; providing an effective date.

By the Committee on Health Care; and Senators Fasano and Lynn--

CS for SB 1722--A bill to be entitled An act relating to multiservice senior centers; creating s. 430.901, F.S.; providing a definition and purposes of a "multiservice senior center"; renumbering and amending s. 430.206, F.S.; providing for certain accreditation; amending s. 430.203, F.S.; repealing a definition of "multiservice senior center," to conform; amending s. 430.205, F.S.; providing that activities of a community care service area may be directed from a multiservice senior center as defined in s. 430.901, F.S.; repealing s. 430.041, F.S., relating to the Office of Long-Term-Care Policy; providing an effective date.

By the Committee on Criminal Justice; and Senator Campbell--

**CS for SB 1802**--A bill to be entitled An act relating to capital collateral representation; amending s. 27.709, F.S.; authorizing the Commission on Capital Cases to sponsor certain continuing legal education classes; amending s. 27.710, F.S.; revising provisions relating to continuing legal education requirements for attorneys on the registry of attorneys applying to represent persons in postconviction capital collateral proceedings; providing for minimum qualification of attorneys on the registry; providing for notification to the court when appointed attorneys fail to submit specified reports; requiring an appointed attorney who does not wish to continue representation at the federal level to make reasonable efforts to assist the client in finding replacement counsel; amending s. 27.711, F.S.; providing for payment of attorneys after a final hearing, rather than after a final order; providing for additional payments to attorneys; increasing the maximum number of inmates which may be represented by a capital collateral attorney; providing an effective date.

By the Committee on Judiciary; and Senator Campbell--

**CS for SB 1810**--A bill to be entitled An act relating to public-records exemptions; creating s. 744.1076, F.S.; exempting from public-records requirements certain court records relating to the appointment of certain court monitors, reports of such monitors, and orders of a court; providing for future legislative review and repeal under the Open Government Sunset Review Act; providing findings of public necessity; providing a contingent effective date.

By the Committee on Judiciary; and Senators Saunders and Fasano--

**CS for SB 1958**--A bill to be entitled An act relating to guardianship; amending s. 744.102, F.S.; defining the terms "audit" and "surrogate guardian"; amending s. 744.1083, F.S.; authorizing revocation or suspension of a guardian's registration; providing that the Statewide Public Guardianship Office need not review credit and criminal investigations from a college or university before registering the institution as a professional guardian; amending s. 744.301, F.S.; providing that in the event of death, the surviving parent is the sole natural guardian of a minor; prohibiting a natural guardian from using the property of the ward for the guardian's benefit without a court order; creating s. 744.3025, F.S.; authorizing a court to appoint a guardian ad litem to represent a minor's interest in certain claims that exceed a specified amount; requiring a court to appoint a guardian ad litem to represent a minor's interest in certain claims that exceed a specified amount; providing that a court need not appoint a guardian ad litem under certain circumstances; requiring a court to award reasonable fees and costs to the guardian ad litem; amending s. 744.3031, F.S.; increasing the time an emergency temporary guardian may serve to 90 days; authorizing an extension; requiring an emergency temporary guardian to file a final report; providing for the contents of the final report; amending s. 744.304, F.S.; specifying the persons who may file a petition for a standby guardian; requiring that notice of the appointment hearing be served on the ward's next of kin; clarifying when a standby guardian may assume the duties of guardian; requiring that each standby guardian submit to credit and criminal background checks; amending s. 744.3115, F.S.; providing a cross-reference; amending s. 744.3135, F.S.; providing procedures for completing a guardians' criminal background investigation; authorizing a guardian to use inkless electronic fingerprinting equipment that is available for background investigations of public employees; providing that a guardian need not be rescreened if he or she uses certain inkless electronic fingerprinting equipment; requiring the Department of Law Enforcement to retain electronically submitted fingerprints and to enter them into the statewide automated fingerprint identification system; requiring the department to search all fingerprint cards received from each guardian and each employee of such guardian against fingerprints retained in the statewide automated fingerprint identification system; requiring a guardian to pay an annual fee to the clerk of court for the background investigation; requiring a guardian and each employee of such guardian to complete an investigation of his or her credit history; requiring the Statewide Public Guardianship Office to adopt a rule for credit investigations of guardians; authorizing the office to inspect the results of any criminal or credit investigation; amending s. 744.3145, F.S.; reducing the time in which a guardian must complete the education courses from 1 year to 4 months; amending s. 744.3215, F.S.; providing that an incapacitated person retains the right to receive necessary services and rehabilitation necessary to maximize the quality of the person's life; amending s. 744.331, F.S.; requiring that the court appoint an attorney from a specified registry; requiring attorneys to complete certain training programs; providing that a member of the examining committee may not be related to or associated with certain persons; prohibiting a person who served on an examining committee from being appointed as the guardian; requiring each member of an examining committee to file an affidavit stating that he or she has completed the mandatory training; providing for training programs; requiring each member to report the time and date that he or she examined the person alleged to be incapacitated; providing for an award of attorney's fees; amending s. 744.341, F.S.; requiring the voluntary guardian to include certain information in the annual report; requiring that certain specified information be included in the notice to terminate a voluntary guardianship; amending s. 744.361, F.S.; requiring a

professional guardian to ensure that each of his or her wards is personally visited at least quarterly; providing for the assessment of certain conditions during the personal visit; amending s. 744.365, F.S.; requiring that the verified inventory include information on any trust to which a ward is a beneficiary; amending s. 744.367, F.S.; requiring that the annual report of the guardian be filed on or before April 1 of each year; amending s. 744.3675, F.S.; requiring that the annual guardianship plan include information on the mental condition of the ward; providing for an annual guardianship plan for wards who are minors; amending s. 744.3678, F.S.; providing that property of the ward which is not under the control of the guardian, including certain trusts, is not subject to annual accounting; requiring certain documentation for the annual accounting; amending s. 744.3679, F.S.; removing a provision prohibiting the clerk of court from having responsibility for monitoring or auditing accounts in certain cases; amending s. 744.368, F.S.; requiring that the verified inventory and the accountings be audited within a specified time period; amending s. 744.441, F.S.; requiring the court to retain oversight for assets of a ward transferred to a trust; creating s. 744.442, F.S.; providing that a guardian may designate a surrogate guardian to exercise the powers of the guardian if the guardian is unavailable to act; requiring the surrogate guardian to be a professional guardian; providing the procedures to be used in appointing a surrogate guardian; providing the duties of a surrogate guardian; requiring the guardian to be liable for the acts of the surrogate guardian; authorizing the guardian to terminate the services of the surrogate guardian by filing a written notice of the termination with the court; amending s. 744.464, F.S.; removing the state attorney from the list of persons to be served a notice of a hearing on restoration of capacity; removing a time limitation on the filing of a suggestion of capacity; amending s. 744.474, F.S.; revising the circumstances under which a guardian may be removed; amending s. 744.511, F.S.; providing that a ward who is a minor need not be served with the final report of a removed guardian; amending s. 744.527, F.S.; providing that final reports for a deceased ward be filed at a specified time; amending s. 744.528, F.S.; providing for a notice of the hearing for objections to a report filed by a guardian; amending s. 744.708, F.S.; requiring a public guardian to ensure that each of his or her wards is personally visited at least quarterly; providing for the assessment of certain conditions during the personal visit; amending s. 765.101, F.S.; redefining the term "health care decision" to include informed consent for mental health treatment services; amending s. 28.345, F.S.; exempting a public guardian from paying court-related fees and charges; amending ss. 121.091, 709.08, and 744.1085, F.S.; conforming cross-references; reenacting s. 117.107(4), F.S., relating to prohibited acts of a notary public, to incorporate the amendment made to s. 744.3215, F.S., in a reference thereto; providing an effective date.

By the Committee on Judiciary; and Senators Webster and Haridopolos--

**CS for SB 1964**--A bill to be entitled An act relating to compensation for wrongfully incarcerated persons; creating s. 961.01, F.S.; providing a short title; creating s. 961.02, F.S.; defining the term "wrongfully incarcerated person"; requiring courts to determine whether certain persons are wrongfully incarcerated persons; authorizing petitions to the court for a determination of wrongful conviction; creating s. 961.03, F.S.; authorizing compensation for certain wrongfully incarcerated persons; providing exceptions and limitations; creating s. 961.04, F.S.; providing procedures to apply to the Attorney General for compensation; providing for presuit negotiation of compensation; authorizing lawsuits against the state for determination of compensation; providing for recovery of certain fees and costs; providing for determination of such fees and costs; reducing compensation based on services received while incarcerated; limiting total compensation; providing for the manner of payment of compensation; providing restrictions on use of compensation; providing timeframes for applying for compensation; creating s. 961.05, F.S.; providing rulemaking authority; providing an effective date.

By the Committee on Criminal Justice; and Senator Alexander--

**CS for SB 1996**--A bill to be entitled An act relating to the petition process; providing a short title; amending s. 99.097, F.S.; revising requirements for verification of signatures on petitions; prescribing limits on use of paid petition circulators; providing procedures to contest alleged improper signature verification; amending s. 100.371, F.S.; revising procedures for placing an initiative on the ballot; providing requirements for information to be contained on petitions; providing procedure for revocation of a petition signature; creating s. 100.372, F.S.; providing regulation for initiative petition circulators and their activities; amending s. 101.161, F.S.; conforming a cross-reference; amending s. 101.62, F.S.; conforming a cross-reference; amending s. 104.012, F.S.; providing criminal penalties for specified offenses involving voter registration applications; amending s. 104.185, F.S.; proscribing specified actions involving petitions and providing or increasing criminal penalties therefor; amending s. 104.42, F.S.; prescribing duties of supervisors of elections with respect to unlawful registrations, petitions, and voting; providing for verifying and counting signatures submitted for verification before the effective date of the act; requiring resubmission and reapproval of petition forms; providing severability; providing an effective date.

By the Committee on Education; and Senators Lynn, Sebesta, Baker, Haridopolos and Peaden--

CS for SJR 2090--A joint resolution proposing an amendment to Section 1 of Article IX of the State Constitution, relating to public education, to amend the class-size requirements for students in grades prekindergarten through 12 and to prescribe minimum salary standards for public school teachers.

By the Committee on Judiciary; and Senator Webster--

CS for SB 2228--A bill to be entitled An act relating to asbestos-related claims; providing legislative findings and intent; defining terms related to asbestos-related claims; providing that the limitations of liabilities in the act apply to a corporation that is a successor and became a successor before January 1, 1972; providing exceptions to the limitations of the act; providing that the cumulative successor asbestos-related liabilities of a corporation are limited to the fair market value of the total gross assets of the transferor determined as of the time of the merger or consolidation; providing an exception; providing methods by which to establish fair market value of total gross assets; providing for the fair market value of total gross assets at the time of a merger or consolidation to increase annually; providing a methodology by which the fair market value of the assets is increased; requiring that the courts liberally construe the act; providing for severability; providing for applicability; providing an effective date.

By the Committee on Criminal Justice; and Senator Baker--

CS for SB 2278--A bill to be entitled An act relating to private security services; amending s. 493.6115, F.S.; revising the types of firearms that a security officer is authorized to carry; providing an effective date.

By the Committee on Criminal Justice; and Senator Crist--

CS for SB 2314--A bill to be entitled An act relating to justice for crime victims; creating s. 943.0315, F.S.; creating the Victims Voice Council within the Department of Law Enforcement; providing membership; requiring the council to review the needs of persons who are the victims of crime in this state; requiring the council to review and comment on certain specified issues; requiring the council to hold public hearings each year; requiring the council to prepare a report and to deliver the report to the Governor and the Legislature by a specified date each year; providing that members of the council are entitled to reimbursement for travel and per diem; authorizing the council to employ an executive director and other staff; providing an effective date.

By the Committee on Health Care; and Senator Fasano--

CS for SB 2364--A bill to be entitled An act relating to elderly affairs; amending s. 430.205, F.S.; deleting the requirement for the Agency for Health Care Administration to develop a plan to integrate a plan for frail elderly persons into a diversion pilot program; deleting the agency's requirement to integrate two separate Medicaid waiver programs into one waiver program; deleting the requirement to seek federal waivers for these waiver programs; requiring the agency and the Department of Elderly Affairs to reimburse providers and develop standards for case management within a certain Medicaid waiver program; authorizing the coordinating of certain medical services to be included in the capitated rate for case management services; deleting the agency's requirements to implement interagency agreements; providing reimbursement for an elderly lead agency on a prepaid or fixed-sum basis for certain services under a particular diversion pilot project; clarifying that the lead agency be reimbursed for all services by the third year of operation; revising the basis under which the agency is required to develop reimbursement rates; deleting the method of rate of payment for custodial nursing home placement beyond the first 3 years; deleting the department's requirements to study and develop a plan for the integration of certain database systems and submit the plan to the Legislature; amending s. 430.7031, F.S.; deleting the requirement for certain program staff to annually review a certain number of case files to find certain nursing home residents who are eligible for possible community placement; amending s. 430.705, F.S.; revising eligibility requirements relating to financial solvency for entities that provide services under the long-term care community diversion pilot projects; authorizing the department to adopt rules; amending s. 430.707, F.S.; requiring project providers to report quarterly to the department regarding compliance with financial requirements; repealing s. 430.041, F.S., relating to the Office of Long-Term-Care Policy; providing an effective date.

## MESSAGES FROM THE GOVERNOR AND OTHER EXECUTIVE COMMUNICATIONS

The Governor advised that he had filed with the Secretary of State SB 1334, CS for SB 1336, SB 1338 and SB 1340 which he

approved on April 5, 2005; CS for SB 200, SB 292, SB 516, SB 1376, SB 1378, SB 1380, SB 1382, SB 1384, SB 1386, SB 1388, SB 1390, SB 1392, SB 1394, CS for SB 1396, SB 1398, SB 1400, SB 1402, SB 1404, CS for SB 1406, CS for SB 1408, CS for SB 1410 and SB 2042 which he approved on April 14, 2005.

## MESSAGES FROM THE HOUSE OF REPRESENTATIVES

### FIRST READING

The Honorable Tom Lee, President

I am directed to inform the Senate that the House of Representatives has passed HB 323, HB 357, HB 473, HB 939 and requests the concurrence of the Senate.
    *John B. Phelps*, Clerk

By Representative Mahon and others--

**HB 323**--A bill to be entitled An act relating to driving under the influence; amending s. 322.292, F.S.; providing additional requirements for DUI education courses; providing an effective date.

--was referred to the Committees on Transportation; and Judiciary.

By Representative Jordan and others--

**HB 357**--A bill to be entitled An act relating to bicycle regulation; amending s. 316.2065, F.S.; revising safety standard requirements for bicycle helmets that must be worn by certain riders and passengers; providing for enforcement of certain bicycle equipment requirements; providing penalties for violations; providing for dismissal of a first offense; providing an effective date.

--was referred to the Committees on Transportation; and Rules and Calendar.

By Representative Poppell and others--

**HB 473**--A bill to be entitled An act relating to water management district security; creating s. 373.6055, F.S.; requiring water management districts with structures or facilities identified as critical infrastructure to conduct criminal history checks of certain persons; authorizing water management districts with structures or facilities that are not identified as critical infrastructure to conduct criminal history checks of certain persons; providing requirements for criminal history checks; requiring submission of fingerprints to the Department of Law Enforcement and the Federal Bureau of Investigation; providing for payment of criminal history check costs; requiring the water management district security's plan to identify criminal history convictions or factors that disqualify applicants for employment and restricted area access; authorizing the use of such factors to disqualify certain employees and other persons; authorizing water management districts to establish appeal procedures; authorizing water management districts to grant temporary waivers; providing offenses that disqualify a person from employment or access to a restricted access area; providing an exception to disqualification; providing an effective date.

--was referred to the Committees on Environmental Preservation; Domestic Security; Criminal Justice; and General Government Appropriations.

By Representative Brown, Coley and others--

**HB 939**--A bill to be entitled An act relating to the Panama City-Bay County Airport and Industrial District, an independent special district in Bay County; codifying, amending, reenacting, and repealing chapter 98-527, Laws of Florida, relating to the district; providing definitions; providing boundaries of the district; providing restrictions with respect to certain real estate; providing for a board of directors and its membership, quorum, travel expenses, and per diem; providing purposes of the district; providing powers of the board; providing for the issuance of bonds; exempting district property from taxation; providing severability; repealing chapter 98-527, Laws of Florida; providing an effective date.

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

Proof of publication of the required notice was attached.

--was referred to the Committee on Rules and Calendar.

**RETURNING MESSAGES--FINAL ACTION**

The Honorable Tom Lee, President

I am directed to inform the Senate that the House of Representatives has concurred in Senate amendment(s) and passed HB 157, as amended.

*John B. Phelps*, Clerk

The Honorable Tom Lee, President

I am directed to inform the Senate that the House of Representatives has passed SB 52, SB 266, CS for SB 366 and CS for SB 1012.

*John B. Phelps*, Clerk

The bills contained in the foregoing messages were ordered enrolled.

<p align="center">**CORRECTION AND APPROVAL OF JOURNAL**</p>

The Journal of April 13 was corrected and approved.

<p align="center">**CO-INTRODUCERS**</p>

Senators Argenziano--CS for SB 612, SB 966; Aronberg--SB 1096, SB 2132; Baker--SB 966; Bennett--SB 102; Crist--CS for SB 938, CS for SB 940, SB 1512, SB 2056, SB 2574; Klein--CS for SB 612; Lawson--SB 966; Lynn--CS for SB 1194; Peaden--SB 966; Posey--SB 2312, SB 2190

<p align="center">**RECESS**</p>

On motion by Senator Pruitt, the Senate recessed at 11:26 a.m. for the purpose of holding committee meetings and conducting other Senate business to reconvene at 1:15 p.m., Wednesday, April 20 or upon call of the President.

<p align="center">**BILL ACTION SUMMARY**</p>

<p align="center">**THURSDAY, APRIL 14, 2005**</p>

| | | |
|---|---|---|
| S | 370 | Read third time; CS passed 39-0 |
| S | 492 | Read third time; CS passed as amended 40-0 |
| S | 612 | Read third time; CS passed as amended 40-0 |
| S | 646 | Read third time; CS passed 40-0 |
| S | 660 | Read third time; CS passed as amended 40-0 |

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

| | | |
|---|---|---|
| S | 938 | Read third time; CS passed 38-2 |
| S | 940 | Read third time; CS passed 35-3 |
| S | 1046 | Read second time; Adopted |
| S | 1144 | Read third time; CS passed 40-0 |
| S | 1172 | Read third time; Passed 38-0 |
| S | 1194 | Read third time; CS passed 40-0 |
| S | 1322 | Read third time; CS passed as amended 40-0 |
| S | 1460 | Read third time; Passed 40-0 |
| S | 1662 | Read third time; CS passed as amended 40-0 |
| S | 1796 | Read third time; Passed 39-0 |
| S | 1960 | Read second time; Adopted |
| S | 1980 | Read third time; Passed 40-0 |
| S | 2010 | Adopted |
| S | 2732 | Adopted |
| S | 2754 | Read second time; Adopted |
| H | 149 | Pending amendment withdrawn; Amendment pending |
| H | 155 | Read third time; Passed 38-0 |
| H | 213 | Read third time; Passed 40-0 |

| H | 281 | Read third time; Passed 40-0 |
| H | 349 | Read third time; Passed 40-0 |
| H | 1177 | Read third time; Passed 35-4 |
| H | 1765 | Read third time; Passed 39-0 |

**Daily Indices for April 14, 2005**

**NUMERIC INDEX**

BA -- Bill Action

BP -- Bill Passed

CO -- Co-Introducers

CR -- Committee Report

CS -- Committee Substitute, First Reading

FR -- First Reading

MO -- Motion

**SB 102** ............................................................. (CO) 461

**CS/SB 214** ......................................................... (MO) 454, (CS) 455

**SB 214** ............................................................. (CR) 454

**CS/SB 274** ......................................................... (CS) 455

**SB 274** ............................................................. (CR) 455

**CS/CS/CS/SB 304** ............................................... (CS) 455

**CS/CS/SB 304** .................................................... (CR) 454

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

**CS/CS/SB 370** ............................................................... (BA) 451, (BP) 451

**CS/SB 440** ................................................................... (MO) 454

**CS/CS/SB 492** ............................................................... (BA) 450, (BP) 451

**CS/SB 514** ................................................................... (MO) 454

**CS/SB 526** ................................................................... (CR) 454

**CS/CS/SB 572** ............................................................... (CS) 457

**CS/SB 572** ................................................................... (CR) 455

**CS/SB 612** ................................................................... (BA) 448, (BP) 448, (CO) 461

**CS/SB 646** ................................................................... (BA) 448, (BP) 448

**CS/SB 660** ................................................................... (BA) 445, (BP) 446

**CS/SB 874** ................................................................... (CS) 457

**SB 874** ....................................................................... (CR) 455

**SB 896** ....................................................................... (MO) 454

**CS/SB 938** ................................................................... (BA) 447, (BP) 447, (CO) 461

**CS/SB 940** ................................................................... (BA) 448, (BP) 448, (CO) 461

**SB 966** ....................................................................... (CO) 461

**CS/SB 974** ................................................................... (CS) 457

**SB 974** ....................................................................... (CR) 455

**CS/SB 1022** ............................................................... (CS) 457

**SB 1022** ................................................................... (CR) 455

**SB 1024** ................................................................... (MO) 454

**CS/CS/SB 1026** ......................................................... (MO) 454

**CS/SB 1028** ............................................................... (MO) 454, (CS) 457

**SB 1028** ................................................................... (CR) 455

**SR 1046** ................................................................... (BP) 438, (FR) 438

**CS/SB 1082** ............................................................... (CS) 457

**SB 1082** ................................................................... (CR) 455

**CS/SB 1096** ............................................................... (CS) 457

**SB 1096** ................................................................... (CR) 455, (CO) 461

**CS/SB 1098** ............................................................... (CS) 457

**SB 1098** ................................................................... (CR) 455

**CS/SB 1144** ............................................................... (BA) 447, (BP) 448

**CS/CS/SB 1168** ......................................................... (CS) 457

**CS/SB 1168** ............................................................... (CR) 455

**SB 1172** ................................................................... (BA) 448, (BP) 448

**CS/SB 1194** ............................................................... (BA) 447, (BP) 447, (CO) 461

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

**CS/SB 1256** ............................................................................................. (CS) 457

**SB 1256** ............................................................................................. (CR) 454

**CS/CS/SB 1258** ............................................................................................. (CS) 458

**CS/SB 1258** ............................................................................................. (CR) 455

**CS/CS/SB 1314** ............................................................................................. (CS) 458

**CS/SB 1314** ............................................................................................. (CR) 455

**CS/CS/SB 1322** ............................................................................................. (BA) 446, (BP) 446

**SB 1360** ............................................................................................. (MO) 454

**CS/SB 1428** ............................................................................................. (CS) 458

**SB 1428** ............................................................................................. (CR) 455

**SB 1460** ............................................................................................. (BA) 450, (BP) 450

**CS/SB 1508** ............................................................................................. (BA) 449

**SB 1512** ............................................................................................. (CO) 461

**CS/SB 1602** ............................................................................................. (CS) 458

**SB 1602** ............................................................................................. (CR) 454

**CS/CS/SB 1650** ............................................................................................. (CS) 458

**CS/SB 1650** ............................................................................................. (CR) 455

**SB 1660** ............................................................................................. (MO) 454

**CS/SB 1662** ........................................................................ (BA) 449, (BP) 449

**SB 1688** ............................................................................. (CR) 454

**CS/SB 1722** ........................................................................ (CS) 458

**SB 1722** ............................................................................. (CR) 455

**SB 1796** ............................................................................. (BA) 449, (BP) 449

**CS/SB 1802** ........................................................................ (CS) 458

**SB 1802** ............................................................................. (CR) 455

**CS/SB 1810** ........................................................................ (CS) 459

**SB 1810** ............................................................................. (CR) 455

**CS/SB 1958** ........................................................................ (CS) 459

**SB 1958** ............................................................................. (CR) 454

**SR 1960** ............................................................................. (BP) 439, (FR) 439

**CS/SB 1964** ........................................................................ (MO) 454, (CS) 459

**SB 1964** ............................................................................. (CR) 454

**SB 1970** ............................................................................. (CR) 454

**SB 1980** ............................................................................. (BA) 449, (BP) 449

**CS/SB 1996** ........................................................................ (CS) 459

**SB 1996** ............................................................................. (CR) 455

**SR 2010** ................................................................ (BP) 439, (FR) 439

**SB 2012** ................................................................ (CR) 454

**SB 2044** ................................................................ (CR) 454

**SB 2056** ................................................................ (CO) 461

**SB 2088** ................................................................ (CR) 454

**CS/SJR 2090** ................................................................ (CS) 460

**SJR 2090** ................................................................ (CR) 454

**SB 2118** ................................................................ (CR) 454

**SB 2132** ................................................................ (CO) 461

**SB 2190** ................................................................ (CO) 461

**SB 2216** ................................................................ (MO) 454

**SB 2220** ................................................................ (MO) 454

**SB 2222** ................................................................ (CR) 454

**CS/SB 2228** ................................................................ (CS) 460

**SB 2228** ................................................................ (CR) 455

**CS/SB 2278** ................................................................ (CS) 460

**SB 2278** ................................................................ (CR) 455

**SB 2296** ................................................................ (CR) 454

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

**SB 2312** ......................................................... (CO) 461

**CS/SB 2314** ................................................... (CS) 460

**SB 2314** ......................................................... (CR) 455

**SB 2344** ......................................................... (MO) 454

**CS/SB 2364** ................................................... (CS) 460

**SB 2364** ......................................................... (CR) 455

**SB 2564** ......................................................... (CR) 454

**SB 2566** ......................................................... (CR) 454

**SB 2568** ......................................................... (CR) 454

**SB 2572** ......................................................... (CR) 454

**SB 2574** ......................................................... (CO) 461

**SB 2614** ......................................................... (CR) 454

**SR 2732** ......................................................... (BP) 439, (FR) 439

**SR 2754** ......................................................... (FR) 444, (BP) 445

**HB 49** ......................................................... (CR) 454

**HB 77** ......................................................... (BA) 449

**HB 149** ......................................................... (BA) 452, (BA) 454

**HB 155** .......................................................................... (BA) 446, (BP) 446

**HB 213** .......................................................................... (BA) 451, (BP) 452

**HB 281** .......................................................................... (BA) 449, (BP) 449

**HB 323** .......................................................................... (FR) 460

**HB 349** .......................................................................... (BA) 447, (BP) 447

**HB 357** .......................................................................... (FR) 460

**HB 473** .......................................................................... (FR) 461

**HB 939** .......................................................................... (FR) 461

**HB 1001** ........................................................................ (CR) 454

**HJR 1177** ....................................................................... (BA) 450, (BP) 450

**HB 1765** ........................................................................ (BA) 452, (BP) 452

### SUBJECT INDEX

**Bills on Third Reading** .............................................................................................................. 445

**Call to Order** .............................................................................................................................. 438

**Co-Introducers** .......................................................................................................................... 461

**Committee Substitutes, First Reading** ................................................................................... 455

**House Messages, Final Action** ................................................................................................. 461

Florida Senate Journal, 2005 Reg. Sess., No. 15, Florida Senate Journal, 2005 Reg....

**House Messages, First Reading**........................................................................................................................................ 460

**Messages From the Governor** ........................................................................................................................................ 460

**Motions Relating to Committee Reference** ................................................................................................................ 454

**Recommendation, Rules Chair**...................................................................................................................................... 443

**Remarks** ............................................................................................................................................................................ 445

**Report, Committee on Rules and Calendar** .............................................................................................................. 445

**Report, Senate General Counsel**.................................................................................................................................. 440

**Reports of Committees** .................................................................................................................................................. 454

**Resolutions**...................................................................................................................................................................... 438

**Special Order Calendar** ................................................................................................................................................ 452

FL S. Jour., 2005 Reg. Sess., No. 15

**End of Document**        © 2014 Thomson Reuters. No claim to original U.S. Government Works.